W. S. BUTTERFIELD THEATRES, INC., *v.*
DEPARTMENT OF REVENUE.

1. WORDS AND PHRASES—STORE.

Popularly, the term "store" means a place where merchandise is sold.

2. STATUTES—WORDS AND PHRASES.

A court must not search afield for meanings of a word used in a statute, where the act itself supplies its own definition of the word used.

3. WORDS AND PHRASES—CHAIN STORE.

The term "branch or chain store," as used in the chain store tax act, is any store or mercantile establishment in excess of 1 owned, operated, maintained or controlled by the same person, firm, corporation, copartnership or association, in which goods, wares or merchandise of any kind are sold at retail (CL 1948, § 205.402).

4. TAXATION—CHAIN STORES—COUNTERS AT THEATERS.

The chain store tax act does not require that sales of goods at retail be conducted in a particular kind of a shop, stall or place of business nor does it exclude a vendor if sales in question are only an incident to some other primary objective, hence, includes theaters at which are located counters or display cases at which candy, confectionery and popcorn are sold at retail (CL 1948, § 205.402).

5. SAME—CHAIN COUNTERS—CLASSIFICATION—CONSTITUTIONAL LAW.

The legislative classification of chain counters, differentiating between such as are owned by the same owner as is carrying on other types of business at the same location and such as owned, maintained or operated on premises in which 2 or more separate business enterprises are carried on under distinct and separate ownership, operation, maintenance and control *held*, not whimsical or capricious, hence, not unconstitutional for reason claimed (US Const, Am 14; Mich Const 1908, art 10, § 4; CL 1948, § 205.402).

6. SAME—CLASSIFICATION—CONSTITUTIONAL LAW.

The power of taxation is fundamental to the very existence of State government and the restriction that it shall not be so

REFERENCES FOR POINTS IN HEADNOTES
[1] 33 Am Jur, Licenses § 47.
[3, 4] 51 Am Jur, Taxation § 1285.
[5] 51 Am Jur, Taxation § 1281.
[6, 7] 51 Am Jur, Taxation § 173 *et seq.*

exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or legislative discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations (US Const, Am 14, § 1; Mich Const 1908, art 10, § 4).

7. Same—Statutes—Classification.

The fact that a tax statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction or if any state of facts reasonably can be conceived to sustain it.

8. Constitutional Law — Taxation — Classification — Courts — Public Policy.

It is not the function of a court to consider the propriety or justness of a tax, to seek for the motives or to criticize the public policy which sustains the classification adopted if there are substantial differences between the separate classifications.

9. Costs—Public Question—Construction of Tax Statute—Chain Counters and Stores—Theaters.

No costs are allowed on State's appeal from court of claims wherein chain store tax had been declared inapplicable to counters for sale of candy, confectionery and popcorn at chain of theaters, a public question being involved (CL 1948, § 205-.402).

Appeal from Court of Claims; McDonald (Archie D.), J., presiding. Submitted April 11, 1958. (Docket No. 55, Calendar No. 47,548.) Decided July 15, 1958.

Claim by W. S. Butterfield Theatres, Inc., and 5 allied corporations, all Michigan corporations, against the Department of Revenue, State of Michigan, for return of chain store tax paid under protest after ruling of State Board of Tax Appeals, with prayer for invalidation of assessments. Judgment for plaintiffs. Defendant appeals. Reversed and tax assessments affirmed.

*Dickinson, Wright, Davis, McKean & Cudlip (Robert E. McKean* and *Robert E. Rann,* of counsel), for plaintiffs.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendant.

SMITH, J.   This case involves the Michigan chain stores tax.* The appellants-appellees (hereinafter referred to collectively as "appellee") are Michigan corporations, taxable as an entity (except Kalamazoo, Michigan Theatre Corporation) under section 3 of the act.   They operate motion picture theaters in various cities and towns throughout the State, approximately 60 in number.   They either own or lease the theater premises involved.   In each of the theaters, it is stipulated, they "are also engaged in dispensing for a consideration, at retail, tangible personal property such as candy, nuts, popcorn and similar items.   In each of these locations there is a space allocated for the purpose of so dispensing such tangible personal property which is occupied by display cases, candy and confectionery counters, popcorn machines and like fixtures and equipment."

The retail business thus transacted is not inconsiderable, involving a total gross for the period from January, 1953, through June, 1954, of $2,497,117.76, and from July, 1954, through December, 1955, a gross of $2,261,056.14.   The State (hereinafter referred to as appellant), through its proper agencies, sought to impose a tax on such retail vending upon the theory that appellee's retail business, above described, is that of operation of a chain of "stores," as the same are defined in section 2 of PA 1933, No 265, *supra,* and are so taxable.

The board of tax appeals having upheld the assessments made on such theory, appeal was taken by

---

* PA 1933, No 265, as amended by PA 1935, No 177 (CL 1948, §§ 205.401–205.413 [Stat Ann 1950 Rev §§ 7.481–7.493]).

the theater corporations to the court of claims*
which, disagreeing with the board, held that "The
counters so operated by appellants are not chain
stores under the meaning of the statute, and there-
fore they are not taxable." The department of rev-
enue of the State has appealed to this Court.

The problem is one of statutory interpretation.
Appellee does not deny that it is in the business of
selling at retail at the above locations but it asserts
that it is not taxable under the act. It reaches this
conclusion by the following process of reasoning:
(a) it asserts that it operates counters, not stores,
(b) upon this premise, it continues, since it does not
operate "stores," it obviously cannot be taxed for
operating stores, particularly for operating "chain"
stores, (c) nor, it asserts, can it be taxed for operat-
ing chain counters since the taxability of chain
counters under the act depends upon a separation of
ownership between the counter operation and that
of the business enterprise in which the counters are
placed. Here, however, in appellee's words, the
"counters are each situated on premises in which
the other business enterprise there carried on is un-
der appellee's own ownership, rather than under
separate ownership." Thus, since it is not operating
stores, it is not taxable for the operation of a chain
of stores, nor, on the other hand, is it taxable for
operating a chain of counters, since their counters
do not come within the statutory definition of taxable
counters. Finally, it is urged, that:

"Appellees' position is that the mere change in
the ownership of the enterprise operating these
counters so that the ownership of that enterprise and
of the premises upon which that enterprise is being
carried on became the same, affords no reasonable
basis for placing the counters in a different classi-

* See department of revenue act, CL 1948, § 205.9 (Stat Ann 1950
Rev § 7.657[9]).—Reporter.

fication than they were prior to such change of ownership. If there is no reasonable basis for placing such counters in different classes and if, as appellant contends, such a different classification is required by the Michigan chain store tax act, that part of the act which so requires constitutes a denial of uniformity of treatment of 'counters.' It therefore contravenes the requirements of article 10, § 4, of the Michigan Constitution (1908). It also constitutes a denial of the equal protection of the laws in contravention of amendment 14, § 1, of the Federal Constitution."

All of this, it will be observed, goes back to the first assumption above made, namely, that appellee operates not stores but counters. What is the difference between a counter and a store? Must there be more than one counter to have a store? Two? That even one is not sufficient may come as a surprise to a host of small "store" keepers in the various hamlets and villages throughout this State. In popular speech the term "store" means a place where merchandise is sold. It may be a portion of a dwelling house, *Craig* v. *Pattison,* 74 Miss 881, 884 (21 So 756), or a "banking house," *Wilson* v. *State,* 24 Conn 57, 70. It may be, simply, a "shop," *Barth* v. *State,* 18 Conn 432, 440, or it may be a "butcher" shop, *Petty* v. *State,* 58 Ark 1 (22 SW 654), or a "junk" shop, *Pitts* v. *City of Vicksburg,* 72 Miss 181 (16 So 418). (In fact we commonly speak of going "shopping" as meaning a visiting of stores.) It may be a popcorn stand, *People* v. *Burley,* 26 Cal App2d 213 (79 P2d 148, 150), a saloon for the sale of "lager beer, cigars, and oysters," *Commonwealth* v. *Whalen,* 131 Mass 419 (syllabus), or a filling station, *Fox* v. *Standard Oil Company of New Jersey* (W Va), 294 US 87 (55 S Ct 333, 79 L ed 780).

With a range of meanings so diverse, and shades of meaning so abstruse, varying, indeed, with statu-

tory purpose, as we range fields of law from the criminal to the commercial to the governmental, not surprising is it that we find our statute "supplying its own glossary." Cardozo, J., in *Fox* v. *Standard Oil Company, supra,* 95. We are not left dependent upon dialect, colloquialism, the language of the arts and sciences, or even the common understanding of the man in the street. We have the act itself. We need not, indeed we must not, search afield for meanings where the act supplies its own. It provides that:

"Sec. 2. The term 'branch or chain store,' as used in this act shall be construed to mean and include any store or stores, or any mercantile establishment or establishments in excess of 1 which are owned, operated, maintained or controlled by the same person, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail." CL 1948, § 205.402 (Stat Ann 1950 Rev § 7.482).

It is clear from the facts stipulated that tangible personal property is dispensed for a consideration to those individuals wishing to avail themselves of the opportunity to so purchase at these locations. We thus have the sale, "at retail," of articles which are, clearly, "goods, wares or merchandise of any kind." The statute does not, indeed, require a store, nor does it require any particular kind of a shop or stall or place of business, it providing that, in the words of Justice Cardozo, construing a like statute (*Fox* v. *Standard Oil Company, supra,* 95, 96), "the place at which the sale is made shall include not only places that in the common speech of men would be designated as stores, but, broadly speaking, any mercantile establishment, whether a store or something else." Nor does the act exclude the vendor if the sales in question are only an incident to some other primary objective, conducted, indeed, in what is

said to be not a store but a "branch office." *Detroit Edison Co.* v. *Secretary of State,* 281 Mich 428. The act, in short, as we said, supplies its own glossary under which the appellee's business is clearly included within "any store or stores, or any mercantile establishment or establishments in excess of 1 which are owned, operated, maintained or controlled by the same person, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail."

The constitutional objection turns upon the classification of counters made by the legislature on the basis of ownership, operation, maintenance or control. The original act (PA 1933, No 265) provided merely for the taxation of chain stores, defined as we have seen. In 1935, by PA 1935, No 177, the portion of the act dealing with branch or chain counters was added, subjecting them to the (lower rate of) tax provided they are located "on premises in which 2 or more separate business enterprises are carried on under distinct and separate ownership, operation, maintenance and control." Appellee argues that if it were not for the fact that there is combined ownership, et cetera, of what appellee variously describes as its "dispensing facilities," its "pop-corn-candy stands," or its "counters," and the other business enterprise (*i.e.,* the theater), it could qualify under the "branch or chain-counter" paragraph of section 2, thus entitling it to the lower tax. It is evident, appellee believes, "that the element of different ownership of the premises upon which the various units of a multiple business enterprise are situated from that of the ownership of the enterprise itself has no conceivable relation to the privilege which is the subject of the tax, *viz.,* the advantage of multiple business operation of that enterprise." Passing over appellant's argument that appellee's attack upon the constitutionality of the amendment

is "self-defeating" (since, appellant urges, if the chain-counter amendment is eliminated on constitutional grounds, appellee is merely remitted back to the original chain-store portion of the act, under which it is now being taxed anyway) we will look to the merits of the argument made. In essence it is urged that concentration of diverse businesses on the same premises and under common ownership, operation, maintenance or control (as opposed to business thereon severally owned or operated) so lacks economic or other significance that it cannot reasonably serve as a basis for classification by the legislature. In support of this novel argument, which challenges our interest, we are cited neither to authoritative precedent (State or Federal), treatise, nor text. Appellee's showing is, thus, far from the convincing demonstration of constitutional infirmity required to warrant our holding of unconstitutionality. What we have here is a chain of substantial business operations, capable of enjoying all of the benefits of coordinated administration and management inhering in centralized ownership or control, taxed at a rate different from that imposed upon businesses without such unity of ownership or control. We cannot agree that the legislature's classification is whimsical or capricious. Moreover, there is manifestly no conflict with the uniformity provision of the Michigan Constitution (1908)* since all persons within the same class are treated alike, either as operators of chains of stores or, in the alternative, chains of counters.

The principles here involved were well expressed by the supreme court of the United States in *State Board of Tax Commissioners of Indiana* v. *Jackson,* 283 US 527, 537 (51 S Ct 540, 75 L ed 1248, 73 ALR 1464), wherein it was held, in upholding the constitutionality of a chain-store tax:

---

* See Const 1908, art 10, § 4.—REPORTER.

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 US 232 (10 S Ct 533, 33 L ed 892); *Southwestern Oil Co.* v. *Texas,* 217 US 114 (30 S Ct 496, 54 L ed 688); *Brown-Forman Co.* v. *Kentucky,* 217 US 563 (30 S Ct 578, 54 L ed 883). The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Refining Co.* v. *Louisiana,* 179 US 89 (21 S Ct 43, 45 L ed 102), or if any state of facts reasonably can be conceived to sustain it. *Rast* v. *Van Deman & Lewis Co.,* 240 US 342 (36 S Ct 370, 60 L ed 679, LRA1917A, 421, Ann Cas 1917B, 455); *Quong Wing* v. *Kirkendall,* 223 US 59 (32 S Ct 192, 56 L ed 350). As was said in *Brown-Forman Co.* v. *Kentucky, supra,* at p 573:

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately class-

ified. Such differences need not be great. The past decisions of the court make this abundantly clear."

See, also, *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich 659.

Reversed and assessments made affirmed. No costs, a public question.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, and Voelker, JJ., concurred.

Kavanagh, J., did not sit.