LUDKA v DEPARTMENT OF TREASURY

Docket No. 81150. Submitted January 8, 1986, at Lansing. Decided October 7, 1986.

Plaintiffs, Walter A. Ludka and his wife, Julia M. Ludka, filed a joint Michigan income tax return for tax year 1980, on which they claimed a credit for income tax paid to Belgium. The credit was disallowed by the Department of Treasury. Plaintiffs paid the tax deficiency which resulted from the credit's disallowance under protest and filed an action in the Court of Claims against the Department of Treasury and the Revenue Commissioner. Plaintiffs contended that they were entitled to a credit for Belgian income taxes under the income tax credit statute which allows a credit for income taxes paid to another state. Plaintiffs subsequently amended their complaint to claim similar credits for tax years 1981, 1982 and 1983. The Court of Claims, Robert Holmes Bell, J., held that plaintiffs were not entitled to the tax credits under the statute. Plaintiffs appealed.

The Court of Appeals *held:*

1. The Legislature at no time intended to provide a Michigan income taxpayer with a credit for income taxes paid to a foreign country. The Court therefore found to be without merit plaintiffs' claim that their vested right to such tax credit was retroactively restricted by the 1982 amendment to the statute in violation of the due process clauses of the United States and Michigan Constitutions.

2. The constitutional prohibition against enactment of ex post facto laws relates only to criminal statutes and therefore has no application to the retroactive effect of the 1982 amendment to the statute.

3. The retroactive provision of the 1982 amendment to the

REFERENCES

Am Jur 2d, State and Local Taxation §§ 8, 68 *et seq.,* 96, 107, 457, 549, 550.

Constitutionality, construction, and application of statutory provisions allowing credit for income tax paid to another state or country. 12 ALR2d 359.

See also the annotations in the Index to Annotations under Income Tax.

statute took effect ninety days after the amendment's passage and therefore does not violate the Michigan constitutional requirement that legislative acts shall not be effective before ninety days after its passage unless immediate effect is given by a two-thirds vote of both the Michigan House of Representatives and the Senate.

4. The allowance of a credit for Canadian provincial income taxes paid by a Michigan income taxpayer, but not for income taxes paid to other foreign governments, does not violate equal protection guarantees.

Affirmed.

1. TAXATION — INCOME TAX — INCOME TAX CREDIT — TAXES PAID TO
   OTHER JURISDICTIONS.

   The purpose of the income tax credit statute and the allowance of tax credit to Michigan income taxpayers who earn income in another state is to avoid triple taxation of income by the payment of taxes in the state where the income was earned, to Michigan, and to the Federal government; a tax credit is not necessary to avoid triple taxation when a Michigan resident earns income in a foreign country because such income is first taxed by the foreign country and then by Michigan, but not by the Federal government, due to the allowance of a tax credit for all income taxes paid by a federal income taxpayer to a foreign country (Internal Revenue Code, § 901; MCL 206.255; MSA 7.557[1255]).

2. TAXATION — STATUTES.

   A statute which imposes a tax implies no contractual obligations between taxpayers and the state; any rights that arise under a tax statute are purely a result of legislative grace and the Legislature is free to take such a right away at any time; a taxpayer has no vested right in a tax statute or in the continuance of any tax law.

3. CONSTITUTIONAL LAW — EX POST FACTO LAWS — TAXATION —
   INCOME TAX — INCOME TAX CREDIT — TAXES PAID TO OTHER
   JURISDICTIONS.

   The constitutional prohibitions against enactment of ex post facto laws relate only to criminal statutes and hence do not apply to the income tax credit statute which allows for a credit for certain income taxes paid to other states or their political subdivisions, the District of Columbia, or a Canadian province, which had retroactive effect after being amended in 1982 (US Const, art I, § 10; Const 1963, art 1, § 10; MCL 206.255; MSA 7.557[1255]).

4. TAXATION — CONSTITUTIONAL LAW — PRESUMPTIONS.

    The Legislature's enactments are generally clothed with a presumption of constitutionality; the presumption of constitutionality following taxing statutes is stronger than that which applies to laws generally; only where a taxing system clearly and palpably violates the fundamental law will it be held invalid.

5. TAXATION — INCOME TAX — INCOME TAX CREDIT — TAXES PAID TO OTHER JURISDICTIONS.

    The statutory provision which allows a tax credit for Canadian provincial income taxes paid by a Michigan resident, but not for taxes paid to other foreign governments, does not violate equal protection guarantees, since the provision is rationally related to the legitimate state interest of providing equal tax treatment to all income earned outside the State of Michigan (US Const, Am XIV; Const 1963, art 1, § 2; MCL 206.255; MSA 7.557[1255]).

*Miller, Canfield, Paddock & Stone* (by *Robert F. Rhoades*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Robert R. Roesch* and *Russell E. Prins*, Assistant Attorneys General, for defendant.

Before: WAHLS, P.J., and MACKENZIE and R. L. TAHVONEN,* JJ.

PER CURIAM. The issue presented in this case is whether plaintiffs are entitled to a credit for income taxes paid to Belgium under § 255 of the Income Tax Act, MCL 206.255; MSA 7.557 (1255). Plaintiffs are United States citizens and Michigan residents. Mr. Ludka worked in Belgium from 1980 to 1983 on an average of five months a year. When Mr. and Mrs. Ludka filed a joint Michigan individual income tax return for tax year 1980, they claimed a credit of $6,153 for taxes paid to

* Circuit judge, sitting on the Court of Appeals by assignment.

"another state" as then permitted by § 255. The credit was not allowed by the Department of Treasury, however, and plaintiffs paid the alleged deficiency under protest and filed this suit in the Court of Claims. Plaintiffs subsequently amended their complaint in order to claim credit for tax years 1981, 1982 and 1983. The lower court held that § 255 did not entitle the plaintiffs to a tax credit for Belgian taxes paid. Plaintiffs appeal as of right. We affirm.

## I. STATUTORY HISTORY

Basically, this Court is called upon to determine what meaning should be assigned to the language employed by the Legislature in § 255 with respect to credit for taxes imposed by another "state." The original form of the foreign tax credit section of the Income Tax Act, MCL 206.255; MSA 7.557 (1255), read as follows:

> (1) A resident individual or resident estate or trust shall be allowed a credit against the tax otherwise due under this act for the amount of any income tax imposed on *him* for the taxable year by another state *of the United States* or a political subdivision *thereof* or the District of Columbia on income derived from sources therein and which is also subject to tax under this act.
> (2) The credit provided under this section shall not exceed the proportion of the tax otherwise due under this act that the amount of the taxpayer's adjusted gross income derived from sources *in the other taxing jurisdiction* bears to *his* entire adjusted gross income as modified by this part. [1967 PA 281.]

In 1978, the statute was amended to read as follows (the emphasized parts of the above statute

were deleted and the emphasized parts of the following statute were added):

(1) A resident individual or resident estate or trust shall be allowed a credit against the tax otherwise due under this act for the amount of *an* income tax imposed on *a resident individual or resident estate or trust* for the taxable year by another state, a political subdivision *of another state,* the District of Columbia, *or a Canadian province,* on income derived from sources without this state which is also subject to tax under this act. *For purposes of the Canadian provincial credit, the credit shall be allowed for only that portion of the provincial tax not claimed as a credit for federal income tax purposes when claiming a credit for United States federal income tax purposes. It is presumed that the Canadian federal income tax is claimed first.*

(2) The credit provided under this section shall not exceed the proportion of the tax otherwise due under this act that the amount of the taxpayer's adjusted gross income derived from sources *without this state* bears to *the taxpayer's* entire adjusted gross income as modified by this part. [1978 PA 589.]

1979 PA 30 added the following subsection (2), renumbering the existing subsection (2) to become subsection (3):

(2) The Canadian provincial credit shall be allowed for the 1978 tax year and for each tax year thereafter.

In 1982, § 255 was amended for the last time, with the modifier "of the United States" reinserted after the word "state" in the statute:

. (1) A resident individual or resident estate or trust shall be allowed a credit against the tax

otherwise due under this act for the amount of an income tax imposed on a resident individual or resident estate or trust for the taxable year by another state *of the United States or* a political subdivision of another state *of the United States,* the District of Columbia, or a Canadian province, on income derived from sources without this state which is also subject to tax under this act. For purposes of the Canadian provincial credit, the credit shall be allowed for only that portion of the provincial tax not claimed as a credit for federal income tax purposes when claiming a credit for United States federal income tax purposes. It is presumed that the Canadian federal income tax is claimed first.

(2) The Canadian provincial credit shall be allowed for the 1978 tax year and for each tax year thereafter.

(3) The credit provided under this section shall not exceed the proportion of the tax otherwise due under this act that the amount of the taxpayer's adjusted gross income derived from sources without this state bears to the taxpayer's entire adjusted gross income as modified by this part. [MCL 206.255; MSA 7.557(1255).]

This final amendment was given retroactive effect (back to the point the 1978 amendment went into effect) by the Legislature. 1982 PA 516.

This Court in *Shulevitz v Dep't of Treasury,* 78 Mich App 655, 658; 261 NW2d 31 (1977), held that the modifier "of the United States" precludes the use of the § 20(2) definition of a "state," meaning that Belgium would not be covered by § 255. Section 20(2) provides:

"State" means any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, and any foreign country, or political subdivision thereof. [MCL 206.20; MSA 7.557(120).]

Plaintiffs argue that the deletion of these modifying words evidences a legislative intent that "state" was to be given its generic meaning as provided in § 20(2). Accordingly, plaintiffs argue that the § 255 credit may be claimed for income taxes paid to a foreign country, e.g., Belgium. Defendant responds that the 1979 amendment effected no change in either the purpose of § 255 or the meaning of "state," and this interpretation is supported by the fact that the modifier was put back into the section.

The Court is thus presented with a question of statutory interpretation, and is guided in its task by several traditional rules of construction. The most pertinent of these were cited concisely in *Davis v Bd of Ed of the River Rouge School Dist,* 73 Mich App 358, 363; 251 NW2d 585 (1977), rev on other grounds 406 Mich 486; 280 NW2d 453 (1979):

> The function of the reviewing court is to seek to effectuate the Legislature's intent. . . . If the statutory language is clear and unambiguous on its face, the statute must be enforced as written. . . . But if the language contains an ambiguity, or is susceptible to two or more constructions, then the Court must look to the objectives sought to be accomplished by the Legislature in passing the statute. [Citations omitted.]

Applying these rules to § 255, we conclude that the Legislature at no time intended that one in the plaintiffs' situation be entitled to a foreign tax credit. Certainly, as long as the modifier "of the United States" appears after the word "state" in the statute, all taxes paid to foreign nations are excluded from the coverage of § 255, as this Court held in *Shulevitz, supra,* p 658. The only question, therefore, is what the Legislature's plan was when

this modifier was removed from § 255 by the 1978 amendment, affecting the years 1979 to 1982 (until the 1982 amendment took effect, reinserting the modifier in the statute).

As this Court recognized in *Shulevitz,* § 255 was designed to avoid the inequality of doubly taxing income earned in foreign countries and triply taxing income earned in other states of the United States. *Shulevitz, supra,* p 659. This is because, under the federal tax system, income, tax paid to the national government of a foreign country is credited against United States income taxes owed, IRC 901, 904, but not income tax paid in a state other than that of residence of the taxpayer. Thus, a Michigan resident who earns income in Ohio in the absence of § 255 would pay United States income tax, Ohio income tax, and Michigan income tax on the same money earned, while a resident working in a foreign country would pay only Michigan income tax and the income tax imposed by that country. This is why the § 255 modifier "of the United States" was inserted, to result in all income earned outside Michigan being subject to double taxation.

Given this policy, contrary to the plaintiffs' assertions, the most plausible analysis is that the 1978 deletion of the modifier was intended to change only the status of Michigan residents working in Canada, with any further effect being unintentional. Canada imposes a national income tax, while the provinces of Canada also impose separate taxes (similar to states in our country). To avoid the triple taxation of residents of Michigan working in that country (Canadian national, Canadian provincial, Michigan), § 255 was amended in 1978 to add special consideration for those paying Canadian taxes. Section 255 was again amended in 1979 to further this same purpose. A reasonable

interpretation of the 1978 amendment is that all of the changes, including the removal of the modifier "of the United States," were intended to alleviate the Canadian tax problem. This is the only interpretation that gives full meaning to all of the words of § 255 after the word "state," for if all countries were included in the statute, the language after the word "state" would be redundant. This conclusion is also consistent with the subsequent expression of legislative intent in the 1982 amendment to § 255 and the intent as described in *Shulevitz.* The plaintiffs have provided no reason to believe the 1978 amendment deviated from this overall pattern of excluding foreign nations from the ambit of § 255 or not to believe that the modifier was removed in 1978 for the purposes of making § 255 consistent with respect to the Canadian tax credit. Once the Legislature realized how the removal of this modifier could be misconstrued (as the plaintiffs have done), it was added back in 1982.

## II. RETROACTIVITY

Plaintiffs argue that the 1982 amendment to § 255 of the Income Tax Act retroactively restricts the applicability of the foreign tax credit in violation of the United States and Michigan Constitutions. The basic claim is that the 1982 amendment retroactively denied a vested right of the plaintiffs, thus violating the due process clauses of US Const, Am XIV and Const 1963, art 1, § 17. See *Wylie v Grand Rapids City Comm,* 293 Mich 571, 586; 292 NW 668 (1940); *Miller v Magline, Inc,* 105 Mich App 413, 419; 306 NW2d 533 (1981), lv den 417 Mich 1038 (1984). Accordingly, the key determination is whether plaintiffs' "right" to a § 255 tax credit was vested or not.

Deciding whether or not a right is vested is a difficult determination, with policy considerations, rather than definitions, controlling. *Wylie, supra,* p 587. Under Michigan standards, the question almost becomes one of title:

"It would seem that a right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another." [*Minty v Bd of State Auditors,* 336 Mich 370, 390; 58 NW2d 106 (1953).]

The federal analysis is very similar, although placing more emphasis on the reliance the plaintiffs had on the preexisting law and whether they would have acted differently had the statute in question been in its retroactive form. *Welch v Henry,* 305 US 134, 146-148; 59 S Ct 121; 83 L Ed 87 (1938); *Metro Homes, Inc v City of Warren,* 19 Mich App 664, 673, n 8; 173 NW2d 230 (1969), lv den 383 Mich 761 (1970), cert den 393 US 959 (1970). Given the nature of the facts in the instant case, both tests are resolved by our determination of the intent of the Legislature in the changes made in § 255 over the past seven years. Because the Legislature never intended the plaintiffs to be eligible for a foreign tax credit, the "right" to such a credit could not have been vested.

In addition, the general nature of tax statutes supports the conclusion that the plaintiffs had no vested right in a foreign tax credit. The statutes imply no contractual obligations between taxpayers and the state, *James A Welch Co, Inc v State Land Office Bd,* 295 Mich 85, 91; 294 NW 377

(1940); *Muirhead v Sands,* 111 Mich 487, 491-492; 69 NW 826 (1897), and because any "rights" that arise under a tax statute are purely a result of legislative "grace," the Legislature is free to take such a "right" away at any time, as it did here. *Rookledge v Garwood,* 340 Mich 444, 457; 65 NW2d 785 (1954); *Wylie, supra,* pp 588-589. That is why the general rule in this area is that a taxpayer has no vested right in a tax statute or in the continuance of any tax law. See 6 Michigan Law and Practice, Constitutional Law, § 223, pp 248-249; 16A CJS, Constitutional Law, § 246, pp 49-52. There is no reason to believe that the instant case should be any different, especially since what the Legislature did here was not to create a new tax liability, but eliminate (giving the plaintiffs a very great benefit of the doubt as to legislative intent) a preexisting tax credit. In addition, because there is no indication that the plaintiffs would have acted differently in 1980 had § 255 been worded as it is presently, no great amount of prejudice to their position compels this Court to declare this statute unconstitutional.

The plaintiffs make two other related constitutional claims which, while they are without merit, require brief mention. First, plaintiffs claim that the retroactive nature of the 1982 amendment to § 255 constitutes an ex post facto law, violating US Const, art I, § 10 and Const 1963, art 1, § 10. The ex post facto rule applies only to criminal cases; therefore, this claim is without merit. *People v Chapman,* 301 Mich 584, 600; 4 NW2d 18 (1942). Even if this rule did apply to civil cases, because of the statutory analysis above, § 255 would not be an example of such a law.

Plaintiffs' second argument is that because the 1982 amendment was not passed by a two-thirds

vote of the Legislature it could not be made retro-
active due to Const 1963, art 4, § 27:

> No act shall take effect until the expiration of
> 90 days from the end of the session at which it
> was passed, but the legislature may give immedi-
> ate effect to acts by a two-thirds vote of the mem-
> bers elected to and serving in each house.

The flaw in plaintiffs' argument is that it assumes
that this provision means that without a two-
thirds vote of the Legislature there can be no
retroactivity, because the law can only have effect
on "transactions" occurring more than ninety days
after its passage. This contention would give § 27
the effect of mandating a two-thirds vote of the
Legislature in order to make a statute retroactive,
which clearly was never the intent of the constitu-
tional provision. Instead, the operation of this
provision as it applies to the instant case is to hold
the effect of this amendment for ninety days, with
the amendment being in full force with full retro-
active effect after that point in time. Because it
has been more than ninety days since the Legisla-
ture passed the 1982 amendment, § 27 is not a bar
to the retroactivity of the statute.

### III. EQUAL PROTECTION

Plaintiffs also argue that § 255 of the Income
Tax Act violates the equal protection clauses of
the United States and Michigan Constitutions in
providing a limited tax credit to Michigan resi-
dents working in Canada but not to those working
in other foreign nations.

The Court of Claims was correct in holding that
§ 255 does not violate any equal protection guaran-
tees. While plaintiffs claim violations of both US
Const, Am XIV and Const 1963, art 1, § 2, the

same analysis is used for both. *Armco Steel Corp v Dep't of Treasury,* 419 Mich 582, 591; 358 NW2d 839 (1984); *Fox v Employment Security Comm,* 379 Mich 579, 588; 153 NW2d 644 (1967); *State Treasurer v Wilson,* 132 Mich App 648, 652, n 2; 347 NW2d 770 (1984), rev'd on other grounds 423 Mich 138; 377 NW2d 703 (1985). Because a tax statute is involved which deals with no special rights or classifications, the "rational basis" test is appropriate. *Allied Stores of Ohio, Inc v Bowers,* 358 US 522; 79 S Ct 437; 3 L Ed 2d 480 (1959); *Wilson, supra,* p 651; *American Amusement Co Inc v Dep't of Treasury,* 91 Mich App 573, 576; 283 NW2d 803, lv den 407 Mich 942 (1979), app dis 446 US 931 (1980). Therefore, the statute in question must bear a rational relationship to a legitimate state interest. *Armco Steel Corp, supra,* p 592. Further clarity is provided in *Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510, 514; 104 NW2d 182 (1960):

> 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. [Citation omitted.]

See also *Wilson, supra,* p 652.

In applying an equal protection analysis to the statute in question, or for that matter to any tax statute, two important considerations must be recognized. First, just because a tax statute draws some lines which may seem at first blush to be arbitrary or unjust, that is not enough by itself to justify striking it down on equal protection grounds:

> The power of exemption would seem to imply the power of discrimination, and in taxation, as in other matters of legislation, classification is within the competency of the legislature. . . .
>
> "Granting the power of classification, we must grant Government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous . . . . The State is not bound by any rigid equality. This is the rule; its limitation is that it must not be exercised in 'clear and hostile discriminations between particular persons and classes.' . . . Thus defined and thus limited, it is a vital principle, giving to the Government freedom to meet its exigencies, not binding its action by rigid formulas but apportioning its burdens and permitting it to make those 'discriminations which the best interests of society require.'" [*Banner Laundering Co v State Board of Tax Administration,* 297 Mich 419, 433-434; 298 NW 73 (1941). Citations omitted.]

See also *Lehnhausen v Lake Shore Auto Parts,* 410 US 356, 360; 93 S Ct 1001, 1004; 35 L Ed 2d 351 (1973); *Covert Twp Assessor v State Tax Comm,* 407 Mich 561, 597; 287 NW2d 895 (1980); *W S Butterfield Theaters, Inc v Revenue Dep't,* 353 Mich 345, 353; 91 NW2d 269 (1958). Second, statutes are presumed to be constitutional, and only by the most "explicit demonstration that a classification is hostile and oppressive to a particular

class" will they be struck down. *Lehnhausen, supra,* 410 US 364; *Butcher v Dep't of Treasury,* 141 Mich App 116, 119; 366 NW2d 15 (1984), aff'd 425 Mich 262; 389 NW2d 412 (1986). This is particularly a strong presumption with respect to tax statutes, which "must clearly and palpably violate the fundamental law" to be declared unconstitutional. *O'Reilly v Wayne Co,* 116 Mich App 582, 591-592; 323 NW2d 493 (1982), lv den 418 Mich 904 (1984); *American Amusement Co, supra,* pp 576-577.

Applying the "rational basis" test to § 255, it is clear that equal protection guarantees have not been violated. As discussed in Issue I, the purpose of § 255 is to avoid the triple taxation of income:

> An income tax credit is allowed for Michigan residents who earn income in another state. The purpose of such a credit is to avoid triple taxation of income. Without such a credit, the Michigan resident would first have his non-Michigan income taxed in the state in which it was earned. Then it would be taxed by the State of Michigan, and subsequently by the United States Government.
>
> Such a state tax credit is not necessary to avoid triple taxation when the Michigan resident earns income in a foreign country. Under such circumstances, the income is first taxed by the foreign country in which it was earned, and it is then taxed by the State of Michigan. However, the Federal Government provides a tax credit for all income taxes paid by a resident to a foreign country similar to the credit available to Michigan residents who earn income in other states. [*Shulevitz, supra,* p 659.]

Given the existence of Canadian provincial income taxation (never disputed by the plaintiffs) which would result in income earned in Canada being triply taxed, it is not surprising that the Legisla-

ture amended § 255 to provide specific credits for Canadian provincial taxes paid. This action fosters its intent behind § 255, which is to provide the equal tax treatment of income obtained from non-Michigan sources, be they foreign or domestic. *Shulevitz, supra,* p 660.

The plaintiffs have failed to demonstrate that the desire to tax equally out-of-state income is not a legitimate state interest or that the wording of § 255 does not further this interest. Plaintiffs cannot overcome the presumption of constitutionality § 255 enjoys; cannot meet the "rational basis" burden as applied to tax statutes, and cannot even meet the "rational basis" burden in general terms. Moreover, plaintiffs have failed to establish that if Belgium had a tax system similar to Canada's, then they would not receive a tax credit for the Belgian provincial taxes they would have paid. Indeed, every indication is that they would receive such a credit. In short, the plaintiffs have not provided grounds to believe that § 255 violates their right to equal protection of the laws.

The Court of Claims correctly held that the retroactive application of § 255 of the Income Tax Act does not violate due process, as it is apparent from the intent of the Legislature that the plaintiffs were never entitled to a tax credit for taxes paid in Belgium. Hence, their "right" to such a credit was never vested. In addition, the provision under § 255 of a tax credit for Canadian provincial taxes paid, but not for taxes paid to other foreign governments, does not violate equal protection guarantees, as this provision is rationally related to the legitimate state interest of providing equal tax treatment to all income earned outside the State of Michigan. Consequently, the decision of the Court of Claims is affirmed.

Affirmed.