JEFFERSON SMURFIT CORPORATION v DEPARTMENT OF TREASURY

Docket No. 224267. Submitted October 9, 2001, at Lansing. Decided November 13, 2001, at 9:00 A.M. Leave to appeal sought.

Jefferson Smurfit Corporation, an Illinois corporation that operates more than 150 plants in thirty states, brought an action in the Court of Claims against the Department of Treasury, challenging the site-specific aspect of the capital acquisition deduction (CAD) contained in § 23 of the Single Business Tax Act (SBTA), MCL 208.23. The plaintiff, which located depreciable property in the state of Michigan in 1997 alleged that the CAD effective for 1997 and 1998 was unconstitutional because it violates the Commerce Clause, US Const, art I, § 8, cl 3, by burdening out-of-state businesses and discriminating against interstate commerce. The Court of Claims, Michael G. Harrison, J., agreed with the plaintiff and entered an order finding subsection 23(e) unconstitutional. The defendant appealed.

The Court of Appeals held:

1. A taxing statute must be shown to clearly and palpably violate the fundamental law before it will be declared unconstitutional. The plaintiff failed to carry its burden of demonstrating that the challenged provision clearly and palpably violates the fundamental law. There was no clear showing of illegitimacy sufficient to overcome the strong presumption of constitutionality afforded taxing statutes.

2. Subsection 23(e) is facially neutral and was not enacted for a discriminatory purpose. The site-specific CAD available pursuant to subsection 23(e) has no discriminatory effect on interstate commerce.

Reversed.

1. STATUTES — CONSTITUTIONAL LAW — TAXING STATUTES.

Statutes are presumed to be constitutional absent a clear showing to the contrary, and the presumption is especially strong with respect to taxing statutes; a taxing statute must be shown to clearly and palpably violate the fundamental law before it may be declared unconstitutional.

2. TAXATION — CONSTITUTIONAL LAW.

A state tax will be found to be constitutionally valid and withstand scrutiny under a Commerce Clause challenge where the tax is applied to an activity having a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state (US Const, art I, § 8, cl 3).

3. TAXATION — CONSTITUTIONAL LAW.

A state tax scheme may be deemed to be unconstitutional and in violation of the Commerce Clause provision prohibiting discrimination against interstate commerce where it is facially discriminatory against interstate commerce, has a discriminatory effect, or was enacted for a discriminatory purpose (US Const, art I, § 8, cl 3).

4. TAXATION — DISCRIMINATORY PURPOSE.

States may design tax systems to promote investment that will provide jobs and prosperity to the citizens of the taxing state, may structure tax schemes to encourage the growth and development of intrastate commerce and industry, and may compete with one another for a share of interstate commerce; they may not, however, discriminatorily tax the products manufactured or the business operations performed in other states.

*Honigman Miller Schwartz and Cohn* (by *Patrick R. Van Tiflin* and *Daniel L. Stanley*), for the plaintiff.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the defendant.

Amicus Curiae:

*Clark Hill PLC* (by *F.R. Damm, Thomas S. Nowinski,* and *David R. Cutler*), for Michigan Manufacturers Association.

Before: K. F. KELLY, P.J., and MURPHY and FITZGERALD, JJ.

MURPHY, J. Defendant Michigan Department of Treasury appeals as of right from an order of the Court of Claims that held unconstitutional MCL 208.23(e), the

site-based capital acquisition deduction provision of the Single Business Tax Act (SBTA), MCL 208.1 *et seq.* The Court of Claims determined that the provision burdened interstate commerce and thus violated the Commerce Clause of the United States Constitution, art I, § 8, cl 3, in that both on its face and in its effect the provision operated in a discriminatory manner. We reverse.

The SBTA imposes a specific tax on the adjusted tax base of every person with business activity in this state that is allocated or apportioned to this state. MCL 208.31(1). The tax base is defined as business income subject to various adjustments. MCL 208.9(1). These adjustments convert an income tax to a value added tax and are designed to reflect business activity. The adjusted tax base is then either allocated to Michigan, if business activities are confined solely to Michigan, MCL 208.40, or apportioned to Michigan, if the taxpayer's business activities are taxable both within and without the state. MCL 208.41.

The apportionment formula of the SBTA has repeatedly changed over the past two decades. In effect for 1997, the tax year at issue, the tax base was apportioned by multiplying that base by a percentage, which was the sum of the property factor multiplied by ten percent, the payroll factor multiplied by ten percent, and the sales factor multiplied by eighty percent. MCL 208.45(5).[1] Once a taxpayer's apportioned tax base is calculated, it is subject to additional adjustments before the specific tax rate provided by

---

[1] Each of the individual contributing factors—property, payroll, and sales—are fractions reflecting the ratio of Michigan activity to out-of-state activity: i.e., Michigan property/total property. See MCL 208.46, 208.49, 208.51.

MCL 208.31(1) is applied. The adjustment here at issue is the capital acquisition deduction (CAD) contained in MCL 208.23.

As originally enacted in 1975, the SBTA computed the CAD for real and personal property differently. 1975 PA 228, § 23. The CAD for real property was limited to property located in Michigan and allowed for a full deduction. 1975 PA 228, subsection 23(c). The CAD for tangible personal property was apportioned to Michigan by multiplying the cost of all tangible personal property acquired during the year "by a fraction, the numerator of which is the payroll factor plus the property factor and the denominator of which is 2." 1975 PA 228, subsection 23(a). Both aspects of the CAD were challenged on constitutional grounds in *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400; 488 NW2d 182 (1992), cert den 506 US 1014 (1992). Subsection 23(a) was challenged on the basis that the apportionment formula was composed of only two factors, property and payroll, while the tax base was apportioned with the three-factor formula that additionally took into account sales. Subsection 23(c) was challenged on the basis that it was unconstitutional to limit the CAD to real property located in Michigan. The Court upheld both aspects, the four-justice majority ruling that neither component violated the Commerce Clause. *Caterpillar, supra* at 429.

Though the CAD provisions were upheld, while *Caterpillar* was pending on appeal before the Michigan Supreme Court the Legislature acted in response to this Court's intermediate ruling in the case. See *Caterpillar, Inc v Dep't of Treasury,* 188 Mich App 621; 470 NW2d 80 (1991). With 1991 PA 77 and 1991 PA 128, the Legislature amended the statute to allow a CAD for the apportioned cost of both real and

tangible personal property located within and without Michigan, using an identical apportionment formula as was used to calculate the apportioned tax base. See MCL 208.23(c) and (d).[2] Notwithstanding our Supreme Court's subsequent decision validating the original structure, the amended 1991 version of the CAD provisions remained effective for five years. That version of the statute went unchallenged.

In 1995, however, the Legislature again amended the CAD and apportionment provisions of the SBTA. Pursuant to 1995 PA 282, for the tax years between January 1, 1997, and December 31, 1998, taxpayers could utilize a site-specific CAD. MCL 208.23(e). Subsection 23(e) directed that this deduction for real and personal property located in Michigan was to be apportioned using the ten percent—ten percent—eighty percent formula provided by MCL 208.45(5). See 1995 PA 283. With the 1995 amendments, the Legislature included "fall-back" provisions. Pursuant to MCL 208.23a, if subsection 23(e) is "declared unconstitutional in a decision rendered by an appellate court and if that decision is not under appeal," subsection 23(e) and various other provisions become ineffective. In their place, MCL 208.23(i) takes effect to allow a CAD for the apportioned cost of tangible assets located within and without Michigan. The apportionment formula to be effective under such circumstance is the twenty-five percent—twenty-five percent—fifty percent formula provided by MCL 208.45(4). Essentially, the fall-back provisions render

---

[2] The then effective, but identically applied, apportionment formula provided for a percentage that was the sum of the property factor multiplied by twenty-five percent, the payroll factor multiplied by twenty-five percent, and the sales factor multiplied by fifty percent. MCL 208.45(4).

the CAD statutory structure for tax years 1997 and 1998 identical to the version in effect between 1991 and 1996, which went unchallenged.[3]

Plaintiff, Jefferson Smurfit Corporation, is an Illinois corporation that manufactures and sells packaging materials. Plaintiff operates over 150 plants in thirty states, and during the year in question, 1997, transacted business in Michigan. During 1997, plaintiff placed in service within and without Michigan over $150 million of depreciable property. Property costing approximately $651,000 was located in Michigan. Plaintiff accordingly filed a tax return taking a CAD for the apportioned cost of those assets located in Michigan. Utilizing MCL 208.23(e) and MCL 208.45(5), the CAD amounted to approximately $21,000.

Subsequently, however, plaintiff filed an amended return utilizing the fall-back provisions of MCL 208.23(i) and MCL 208.45(4) and taking a CAD on the apportioned cost of its total assets acquired during 1997. Plaintiff's amended return, incorporating the alternate apportionment formula and an increased CAD, resulted in a significant decrease in its tax liability. In conjunction with the filing of that amended return, plaintiff initiated the instant action challenging the site-specific aspect of the CAD effective for tax

---

[3] In 1999 the Legislature yet again amended the SBTA. Effective for tax years beginning January 1, 2000, both the site-specific and fall-back capital acquisition deduction provisions expire. See MCL 208.23 as amended by 1999 PA 115. The legislation also phases out the SBTA, by reducing the tax rate of 2.3 percent by 0.1 percent a year, potentially ending the tax in twenty-three years. 1999 PA 115, § 3. Additionally, 1999 PA 115 adds to the SBTA an investment tax credit. For tax years beginning after December 31, 1999, the credit is available to all businesses that make qualified capital investments in Michigan. MCL 208.35a(1). The tax credit is computed by multiplying the total qualified capital investments in Michigan by 0.85 percent, this percentage then reduced proportionate to the tax rate reduction. MCL 208.35a(2).

years 1997 and 1998 as unconstitutional. Plaintiff contended that subsection 23(e) violates the Commerce Clause, US Const, art I, § 8, cl 3, because it burdens out-of-state businesses and thus discriminates against interstate commerce. The Court of Claims agreed with plaintiff, and defendant now appeals.

This case presents an issue of statutory construction that this Court reviews de novo. See *Brown v Michigan Health Care Corp*, 463 Mich 368, 374; 617 NW2d 301 (2000). Specifically, the question at issue concerns the constitutionality of MCL 208.23(e) in view of the negative or dormant aspect of the Commerce Clause, US Const, art I, § 8, cl 3, which prohibits state practices that discriminate against interstate commerce. See *Wyoming v Oklahoma*, 502 US 437, 454; 112 S Ct 789; 117 L Ed 2d 1 (1992).

The framework for constitutional analysis is well established, and was effectively detailed by our Supreme Court in *Caterpillar, supra* at 413-415. A statute is presumed constitutional absent a clear showing to the contrary. *Lehnhausen v Lake Shore Auto Parts Co*, 410 US 356, 364; 93 S Ct 1001; 35 L Ed 2d 351 (1973). The presumption of constitutionality is especially strong with respect to taxing statutes. *Ludka v Dep't of Treasury*, 155 Mich App 250, 264; 399 NW2d 490 (1986), citing *O'Reilly v Wayne Co*, 116 Mich App 582, 591-592; 323 NW2d 493 (1982). Furthermore, deference should be afforded state legislatures, which have great discretionary latitude in formulating taxes. See *Wisconsin v J C Penney Co*, 311 US 435, 444-445; 61 S Ct 246; 85 L Ed 267 (1940). A taxing statute must be shown to "clearly and palpably violate[ ] the fundamental law" before it will be declared unconstitutional. *O'Reilly, supra* at 592, quoting *American Amusement Co, Inc v Dep't of Treasury*, 91

Mich App 573, 577; 283 NW2d 803 (1979), quoting *Thoman v Lansing*, 315 Mich 566, 577; 24 NW2d 213 (1946), quoting others (internal quotation marks omitted).

As indicated by our Supreme Court in *Caterpillar, supra* at 415, the United States Supreme Court has

established a four-pronged test to determine whether a state tax violates the Commerce Clause. *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977). A state tax will withstand scrutiny under a Commerce Clause challenge and will be held to be constitutionally valid under the four-pronged test articulated in *Complete Auto* provided that the tax: (1) is applied to an activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state.[26]

---

[26] Since the *Complete Auto* decision, the four-pronged test has been applied on numerous occasions. See, e.g., *Trinova* [*Corp v Michigan Dep't of Treasury*, 498 US 358; 111 S Ct 818; 112 L Ed 2d 884 (1991)]; *Goldberg v Sweet*, 488 US 252; 109 S Ct 582; 102 L Ed 2d 607 (1989); *Amerada Hess Corp v New Jersey Dep't of the Treasury*, 490 US 66; 109 S Ct 1617; 104 L Ed 2d 58 (1989); *American Trucking Ass'ns, Inc v Scheiner*, [483 US 266; 107 S Ct 2829; 97 L Ed 2d 226 (1987)]; *Maryland v Louisiana*, 451 US 725; 101 S Ct 2114; 68 L Ed 2d 576 (1981).

---

At issue here is the third prong of the *Complete Auto* test. Under that prong, a state tax scheme will be deemed unconstitutional if it (1) is facially discriminatory against interstate commerce, (2) has a discriminatory effect, or (3) was enacted for a discriminatory purpose. *Amerada Hess, supra* at 75. The Court of Claims held that "MCL 208.23(e), the site-based capital acquisition deduction to Michigan's single business

tax, discriminates both on its face and in its effect on interstate commerce."

With respect to the first question, whether the CAD provision, subsection 23(e), exhibits facial discrimination, our Supreme Court's *Caterpillar* decision is instructive. There, in consideration of the site-specific real property CAD available pursuant to subsection 23(c), the Court noted that "[t]he CAD is available for any taxpayer, whether a multistate company or a company whose business activity is allocated entirely to Michigan—an in-state company." *Caterpillar*, *supra* at 422. Thus, held the Court, the plaintiff, Caterpillar, could not "point to any treatment of in-state and out-of-state companies that [was] discriminatory on its face." *Id.* at 422-423. Here, the site-specific CAD for real and personal property is likewise available to any and all companies doing any measure of business in Michigan. Accordingly, we conclude that subsection 23(e) is facially neutral.

Before contemplating the potential of discriminatory effect, we briefly address the question whether subsection 23(e) was enacted for a discriminatory purpose. Although plaintiff contends a discriminatory purpose is indicated by particular legislative commentary at the time of consideration of the 1995 amendments, we do not share plaintiff's interpretation of the referenced dialogue. To the contrary, we believe that such discussions regarding the goal of encouraging investment in Michigan fall in line with repeatedly approved intent and practice:

> It is a laudatory goal in the design of a tax system to promote investment that will provide jobs and prosperity to the citizens of the taxing State. States are free to "structur[e] their tax systems to encourage the growth and development of intrastate commerce and industry." [*Trinova, supra* at

385-386, quoting *Boston Stock Exchange v State Tax Comm*, 429 US 318, 336; 97 S Ct 599; 50 L Ed 2d 514 (1977).]

The Legislature's intent being legitimate, what remains to be considered is whether such a laudatory goal is achieved without discriminatory effect.

States may compete with one another for a share of interstate commerce, they just may not discriminatorily tax the products manufactured or the business operations performed in other states. *Boston Stock Exchange, supra* at 336-337. Here, the CAD is available to all Michigan taxpayers who locate new property in Michigan, whether intrastate or multistate businesses, and it is available at the same apportioned rate as is applied to the taxpayer's overall tax base. The three-factor apportionment formula of the SBTA has survived constitutional challenge, see *Trinova, supra* at 387, and the availability of an apportioned CAD in a given tax year is not dependent on the initial location of the taxpayer's assets, but rather turns on the taxpayer's election to increase its Michigan investment.

We conclude, therefore, that the CAD provision is not designed to punish multistate taxpayers who choose not to increase their Michigan presence. Moreover, we are not convinced that the CAD provision is responsible for any deleterious effects suffered by multistate taxpayers who opt to increase activity outside Michigan. Accordingly, we note agreement with an analysis adopted by our Supreme Court in *Caterpillar, supra* at 425:

"Generally speaking, the overall tax consequences to a multistate taxpayer will be dependent upon the nature of its business activities and whether it is eligible and elects to avail itself of the tax reduction incentives afforded by the

[SBT]." [Pollock, *Multistate taxpayers under the Single Business Tax Act*, 22 Wayne L R 1101, 1113 (1976).]

We hold that the site-specific CAD available pursuant to subsection 23(e) has no discriminatory effect on interstate commerce.

Contrary to the Court of Claims, we hold that plaintiff has failed to carry its burden of demonstrating that the challenged provision clearly and palpably violates the fundamental law. *Thoman, supra* at 576; *O'Reilly, supra* at 592. We find no clear showing of illegitimacy sufficient to overcome the strong presumption of constitutionality accorded this provision of Michigan's single business tax scheme. See *Lehnhausen, supra; Ludka, supra.*

Reversed.