FLUOR ENTERPRISES, INC v DEPARTMENT OF TREASURY

Docket No. 251005. Submitted April 6, 2005, at Lansing. Decided April 14, 2005, at 9:10 a.m.

Fluor Enterprises, Inc., brought an action in the Court of Claims against the Department of Treasury, seeking to recover single business taxes paid under protest and interest, costs, and attorney fees. Fluor had performed architectural and engineering services outside Michigan for construction projects in Michigan. Following an audit, the department had assessed single business taxes for the out-of-state activities, determining that they were taxable sales under MCL 208.53(c) of the Single Business Tax Act, MCL 208.1 *et seq*. On cross-motions for summary disposition, the court, Paula J. Manderfield, J., granted summary disposition for the plaintiff, determining that the out-of-state activities were not taxable sales under the act. The department appealed.

The Court of Appeals *held*:

1. MCL 208.53(c) provides that receipts derived from services performed for planning, design, or construction activities within this state shall be deemed Michigan receipts. The trial court incorrectly interpreted § 53(c). A proper construction of § 53(c) under the last antecedent rule supports the department's interpretation that § 53(c) means that receipts derived from services performed out of state for planning, design, or construction activities performed in the state are to be treated as Michigan receipts.

2. MCL 208.53(c) is unconstitutional because it violates the Commerce Clause, US Const, art I, § 8, cl 3. *Complete Auto Transit, Inc v Brady*, 430 US 274, 279 (1977), provides a test to determine the constitutional validity of a state tax. That validity depends on whether the tax is applied to an activity having a substantial nexus with the taxing state, the tax is fairly apportioned, the tax does not discriminate against interstate commerce, and the tax is fairly related to the services provided by the state. Section 53(c) fails the internal consistency component of the fair apportionment prong and the prong prohibiting discrimination against interstate commerce of the *Complete Auto* test. Each state may only tax its fair share of interstate business activity. The tax

structure must be internally consistent; it must be structured so that if every state were to impose an identical tax, no multiple taxation would result. Section 53(c) fails this test. The statute would improperly allow the taxation of out-of-state activities by Michigan and by the states in which those activities took place. Because there was a question of law on the constitutionality issue, summary disposition was erroneously granted. The case must be remanded for reconsideration of tax calculations.

Remanded for further proceedings.

CONSTITUTIONAL LAW — COMMERCE CLAUSE — SINGLE BUSINESS TAX — OUT-OF-STATE SERVICES.

The section of the Single Business Tax Act that provides that receipts derived from services performed for planning, design, or construction activities within this state shall be deemed Michigan receipts violates the Commerce Clause; the section fails the requirement that each state tax only its fair share of interstate business activity; taxation under the section is not structured so that no multiple taxation would result if every state were to impose an identical tax (MCL 208.53[c]).

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin* and *Daniel L. Stanley*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the defendant.

Before: CAVANAGH, P.J., and JANSEN and GAGE, JJ.

PER CURIAM. Plaintiff, a California corporation that engages in engineering, construction, and technical services, performed architectural and engineering services at its out-of-state offices for projects located in Michigan during the tax years 1989 to 1994.[1] The Court of Claims held that receipts from the services performed

---

[1] Plaintiff also engaged in construction management and material procurement in Michigan, but receipts for these activities are not at issue in this case.

outside Michigan for projects constructed in Michigan were not "in this state" for the purpose of calculating the sales factor to be used in apportioning plaintiff's tax base under the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*[2] Defendant appeals as of right the September 2, 2003, judgment of the Court of Claims, arguing that the court incorrectly interpreted MCL 208.53(c). We agree with defendant's interpretation of the provision, but conclude that the provision violates the Commerce Clause, US Const, art I, § 8, cl 3.

### I. FACTUAL BACKGROUND AND PROCEDURE

The facts in this case are undisputed. The receipts at issue were received by plaintiff for engineering and architectural services related to real estate improvement projects constructed in Michigan. The services were performed by plaintiff's employees at out-of-state facilities. Plaintiff timely filed single business tax (SBT) returns for the years at issue. However, plaintiff did not report the receipts at issue as Michigan receipts. Following an audit, defendant issued three bills for taxes due (intents to assess) totaling $182,312.

Plaintiff requested an informal conference with defendant's Hearings Division. Following an informal conference, the department referee issued a recommendation to the Commissioner of Revenue. The hearing referee agreed with plaintiff's interpretation of § 53(c). However, the Commissioner of Revenue disagreed with the referee's analysis and directed that the taxes be assessed as originally determined. Following the commissioner's order, defendant issued three bills for taxes due (final assessments) for total tax and interest of

---

[2] We note that for tax years beginning after December 31, 2009, the SBTA has been repealed.

$343,340.96, which plaintiff then paid under protest. Plaintiff subsequently paid an additional $3,077.35 in interest.

Plaintiff filed this action in the Court of Claims to recover $346,618.31 paid under protest plus additional statutory interest, costs, and attorney fees. The parties both filed motions for summary disposition. Plaintiff moved for summary disposition pursuant to MCR 2.116(A) (judgment on stipulated facts). Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). The Court of Claims concluded that the plain language of the statute supported plaintiff's position and entered judgment in favor of plaintiff, ordering defendant to pay $346,418.31 and interest.

## II. OVERVIEW OF THE SBTA

The SBT is a form of value added tax. *Trinova Corp v Dep't of Treasury*, 433 Mich 141, 149; 445 NW2d 428 (1989), aff'd and rem *Trinova Corp v Michigan Dep't of Treasury*, 498 US 358; 111 S Ct 818, 112 L Ed 2d 884 (1991).

> "Value added is defined as the increase in the value of goods and services brought about by whatever a business does to them between the time of purchase and the time of sale." [Haughey, *The economic logic of the single business tax*, 22 Wayne L R 1018 n 6 (1976).] In short, a value added tax is a tax upon business activity. The [SBTA] employs a value added measure of business activity . . . . It is not a tax on income. [*Trinova*, 433 Mich at 149.]

The Michigan Supreme Court's decision in *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473; 373 NW2d 730 (1985), includes an extensive discussion of value-added taxes and a comparison with income taxes. The Court explained:

Both income taxes and value-added taxes are taxes on the economic process; the difference between them lies in what point of the process they attach to or, to put it another way, in what elements of the economic process they tax. The income tax taxes what has been received from the economy, when it becomes "income." The VAT [value added tax] taxes economic activity itself and can be described in two ways: as a tax on the economic actor's use of the scarce resources of society, or as a tax on the value the economic actor adds to the economy. In the end, the income tax and the VAT tax the same things, but at different stages of the economic process, and thus generate the same amount of revenue and affect the economy identically.

The economic process consists of the use of various inputs in order to produce final goods. These inputs include: raw materials or land, intermediate goods, labor, capital, and profits. The value added to the economy by the production of final goods is the sum total of all the inputs into their production. Haughey, *The economic logic of the single business tax,* 22 Wayne L R 1017, 1018-1020 (1976). The value added by the production of a final good is the sum of the value of the raw materials, intermediate goods, labor, capital, and the profit which were combined in order to produce that final good. The value-added tax is imposed on the value added by the production of the final good or, to say the same thing in another way, upon the use of all these inputs in adding value to the economy.

The value of the inputs used is measured by the cost to the producer of obtaining the use of those inputs. The value of the worker's labor is the wages the laborer is paid to produce the good. The value of the raw materials, intermediate goods, and capital is what the producer must pay in order to obtain the use of these things. And the profit is what keeps the producer-entrepreneur in business, which is measured by the difference between the cost of production and the receipts from sales.

It is apparent that the income tax and the VAT are in reality opposite sides of the same coin. The value of the labor used in production, and the cost to the producer of obtaining the labor, is the wages paid to the laborer, and the

income the worker receives for providing labor to the economy. The value of the capital and intermediate goods used is what the producer must pay to obtain them, and that is equivalent to the receipts of their suppliers for providing the labor, entrepreneurial effort, and capital with which to produce them. The profit which keeps the producer in the business of producing is the income received for doing so.

Both the income tax and the VAT tax the value of the inputs used in the economic process as measured by the value, or price, ascribed to that input by the economy. The basic difference is that the VAT taxes the price paid for the input and the income tax taxes the price received for the input. The VAT taxes the use of the resources of society; the income tax taxes the return received for supplying those resources to the economy. [*Mobil Oil,* 422 Mich at 492-495.]

The SBTA " 'measures the increase in value of goods and services brought about by whatever a business does to them between the time of purchase and time of sale.' The tax is on what a business has added to the Michigan economy, not on what the business has derived from this state's economy." *Columbia Assoc, LP v Dep't of Treasury,* 250 Mich App 656, 666-667; 649 NW2d 760 (2002), quoting *Guardian Photo, Inc v Dep't of Treasury,* 243 Mich App 270, 277; 621 NW2d 233 (2000).

The first step in computing the tax is the calculation of the taxpayer's tax base. See *Trinova,* 433 Mich at 150, and *Mobil Oil,* 422 Mich at 495-497, which discuss the methods of calculating the tax base. Plaintiff's tax base is not at issue here.

The dispute in the present case concerns the second step of computing the tax, that is allocation or apportionment. "Once the taxpayer's tax base is determined, it must then be allocated to the state where the business activity of the taxpayer can be fairly attributed.' As a general principle, a State may not tax value earned

outside its borders.' " *Trinova*, 433 Mich at 151, quoting *ASARCO, Inc v Idaho State Tax Comm*, 458 US 307, 315; 102 S Ct 3103; 73 L Ed 2d 787 (1982). Where a "taxpayer's business activity was only partially attributable to Michigan, only a portion of that activity may constitutionally be taxed. Consequently, the act provides a formula for apportioning a taxpayer's tax base between two or more taxing states." *Trinova*, 433 Mich at 151. Apportionment is permissible because precise geographic measurement of value added is not feasible. *Trinova*, 498 US at 374-377.

The SBTA apportionment formula is derived from a calculation involving three ratios, which are referred to as the property factor, the payroll factor, and the sales factor. MCL 208.45, 208.45a.[3] The formula determines an apportionment factor (a percentage under the current version), which is multiplied by the total tax base; this result, statutorily subject to other adjustments not pertinent in this case, is the taxpayer's "adjusted tax base." *Trinova*, 433 Mich at 152-153. The adjusted tax base is used to calculate the SBT liability pursuant to MCL 208.31. *Trinova*, 433 Mich at 153.

The sales factor is the subject of the present dispute. The term "sales" is defined in MCL 208.7 and includes "the performance of services." MCL 208.7(1)(a)(ii). The sales factor is defined in MCL 208.51 as a fraction with

[3] For tax years beginning before January 1991, the apportionment factor was the average of three ratios each weighted 33-1/3 percent. MCL 208.45(1). See *Corning, Inc v Dep't of Treasury*, 212 Mich App 1, 3; 537 NW2d 466 (1995). In 1991, the Legislature changed the formula to give more weight to the sales factor. At present, the three factors are each multiplied by a separately stated percentage (e.g., property factor is multiplied by five percent, payroll factor is multiplied by five percent, sales factor is multiplied by ninety percent) and then the results are added together to determine the apportionment factor. MCL 208.45(2)-(7); MCL 208.45a.

the numerator being the "the total sales of the taxpayer in this state during the tax year," and the denominator being "the total sales of the taxpayer everywhere during the tax year." MCL 208.52 sets forth specific circumstances when "[s]ales of tangible personal property are in this state." MCL 208.53 addresses sales "other than sales of tangible personal property[.]"

Sales, other than sales of tangible personal property, are in this state if:

(a) The business activity is performed in this state.

(b) The business activity is performed both in and outside this state and, based on costs of performance, a greater proportion of the business activity is performed in this state than is performed outside this state.

(c) Receipts derived from services performed for planning, design, or construction activities within this state shall be deemed Michigan receipts.

The parties dispute the meaning of subsection c.

### III. INTERPRETATION OF MCL 208.53(c)

Essentially, plaintiff offers two grammatical analyses to support its view. Plaintiff contends that the subsection "can only be read to refer to planning activities within this state, design activities within this state, or construction activities within this state," and the receipts at issue were derived from planning and design activities that occurred outside the state. In other words, "planning, design, or construction" and "within this state" modify "activities." Plaintiff also argues that the statute "can only be reasonably read to refer to 'services performed . . . within this state.'" In other words, "within this state" modifies "performed." The administrative hearing referee essentially agreed with plaintiff.

In contrast, defendant argues that the statute in effect states that "receipts derived from services performed out-of-state for planning, design, or construction/business activities performed in the state are treated as if Michigan receipts." According to defendant, subsection c applies to the challenged receipts for plaintiff's services because they were "derived from services performed for . . . construction activities within this state . . . ." The Commissioner of Revenue agreed with defendant's analysis.

The Court of Claims concluded that the plain language of the statute supported plaintiff's position.

> [U]pon a plain reading of subsection (c) of MCL 208.53, one comes away with the impression that receipts from services performed within this state for construction projects in Michigan are deemed to be Michigan receipts.
>
> In order to adopt the interpretation advocated by the Department in this matter, one would have to literally rewrite the statute, as Plaintiff has alleged, to read: Receipts derived from planning, design, and construction activities for construction projects located within this state shall be deemed Michigan receipts.
>
> It defies logic that, if this was truly what the legislature would have intended, that [sic] they would have enacted section 53(c) in its present form.

This Court reviews de novo a decision by the Court of Claims on a motion for summary disposition and issues requiring statutory interpretation. *Herald Wholesale, Inc v Dep't of Treasury,* 262 Mich App 688, 693; 687 NW2d 172 (2004).

The primary objective of judicial interpretation of statutes is to determine and give effect to the intent of the Legislature. Courts must initially examine the text of the statute. *In re MCI Telecom Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999).

"The words of a statute provide 'the most reliable evidence of [the Legislature's] intent . . . . ' " *Sun Valley Foods Co v Ward,* 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette,* 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). In discerning legislative intent, a court must "give effect to every word, phrase, and clause in a statute . . . ." *State Farm Fire & Cas Co v Old Republic Ins Co,* 466 Mich 142, 146; 644 NW2d 715 (2002). The Court must consider "both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " *Sun Valley, supra* at 237, quoting *Bailey v United States,* 516 US 137, 145; 116 S Ct 501, 133 L Ed 2d 472 (1995). "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Sun Valley, supra* at 237. "If the language of a statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id.* at 236. [*Shinholster v Annapolis Hosp,* 471 Mich 540, 549; 685 NW2d 275 (2004).]

According to *Mayor of Lansing v Pub Service Comm,* 470 Mich 154, 165-166; 680 NW2d 840 (2004), the test for determining when a statute is ambiguous is *not* whether reasonable minds can differ concerning the meaning of the statute:

The dissent would hasten findings of "ambiguity" by courts by predicating these findings on the basis of whether "reasonable minds can differ regarding" the meaning of a statute. *Post* at 174. Especially in the context of the types of cases and controversies considered by this Court—those in which the parties have been the most determined and persistent, the most persuaded by the merits of their own respective arguments—it is extraordinarily difficult to conclude that reasonable minds cannot differ on the correct outcome. That is not, and has never been, the standard either for resolving cases or for ascertaining the existence of an ambiguity in the law. The law is not ambiguous whenever a dissenting (and presumably reasonable) justice would interpret such law in a manner contrary to a

majority. Where a majority finds the law to mean one thing and a dissenter finds it to mean another, neither may have concluded that the law is "ambiguous," and their disagreement by itself does not transform that which is unambiguous into that which is ambiguous. Rather, a provision of the law is ambiguous only if it "irreconcilably conflict[s]" with another provision, [*Klapp v United Ins Group Agency, Inc,* 468 Mich 459, 467; 663 NW2d 447 (2003)], or when it is *equally* susceptible to more than a single meaning. [Emphasis in original.]

Under this "traditional approach . . . only a few provisions are truly ambiguous . . . ." *Mayor of Lansing,* 470 Mich at 166.

Grammatically, the phrase "within this state" modifies "activities," which is the last antecedent. "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *In re Certified Question (Kenneth Henes Special Projects v Continental Biomass),* 468 Mich 109, 113; 659 NW2d 597 (2003). "It is a general rule of statutory, as well as grammatical, construction that a modifying clause is confined to the last antecedent, unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Winokur v State Bd of Dentistry,* 366 Mich 261, 266; 114 NW2d 233 (1962); *Stanton v Battle Creek,* 466 Mich 611, 616; 647 NW2d 508 (2002); 2A Singer, Sutherland Statutory Construction (6th ed), § 47:26, pp 333-334; § 47:33, 369-371. "The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.' " *Id.* at § 47:33, pp 369-371 (citation deleted). In MCL 208.53(c), the last antecedent for the phrase "within this state" is "activities."

Thus, the language at issue, examined in its grammatical context, supports defendant's position. The

challenged receipts are "derived from services performed for planning, design, or construction activities within this state" and therefore "shall· be deemed Michigan receipts." MCL 208.53(c). Plaintiff essentially advocates an interpretation that "within this state" modifies "performed," which is not the last antecedent for the phrase. If the Legislature intended that meaning, the section would have been written, "Receipts derived from services performed within this state for planning, design, or construction activities shall be deemed Michigan receipts."

Plaintiff notes that § 53(c) is prefaced with the word "if," and argues that it is therefore not a directive, but a condition. According to plaintiff, "As written, and in accordance with standard rules of grammatical construction, § 53(c) <u>presents only a necessary condition</u> that must be satisfied in order for a sale to be a Michigan sale. Section 53(c) does not direct that certain receipts be considered Michigan sales, but only that some other provision may specify the circumstances under which those receipts are 'deemed' Michigan sales."

Although the structure of § 53 indicates that subsection c as well as subsections a and b are prefaced with "if," that conditional construction of subsection c is problematic. The difficulty is demonstrated by reversing the order of the clauses: If certain receipts (those derived from services performed for planning, design, or construction activities within this state) "shall be deemed Michigan receipts," then sales, other than sales of tangible personal property, are in this state. The conditional "if" conflicts with the mandatory "shall." It is unclear who or by what authority receipts "shall be deemed Michigan receipts." If that purported condition were somehow satisfied, the statute would apparently

indicate that all sales, with the exception of sales of tangible personal property, are "in this state." Although "if" seems to correctly preface subsections a and b, we are not persuaded that subsection c is conditional, as argued by plaintiff.

In summary, § 53(c) is not ambiguous, i.e., it does not irreconcilably conflict with another provision and is not equally susceptible to more than a single meaning. *Mayor of Lansing*, 470 Mich at 165-166. Rather, in its grammatical context, the last antecedent for "within this state" is "activities." Accordingly, receipts derived from services performed for construction activities within this state shall be deemed Michigan receipts for the purpose of the sales factor. The parties agreed that the challenged receipts were for services "that related to real estate improvement projects constructed in Michigan." Thus, these receipts were derived from services performed for construction activities within this state. The Court of Claims incorrectly interpreted the statute.

### IV. COMMERCE CLAUSE ANALYSIS

Defendant contends that its interpretation of § 53(c) does not violate the Commerce Clause, as was alleged in plaintiff's complaint. Although the constitutionality of § 53(c) as interpreted by defendant was addressed by the parties in their briefs in support of, and in response to, the motions for summary disposition, the Court of Claims accepted plaintiff's interpretation of § 53(c) and did not decide the issue whether defendant's interpretation of § 53(c) would violate the Commerce Clause. This Court may address an issue not decided by the trial court where the Court may decide the issue as a matter of law and the facts necessary for resolution have been

presented. *Village of Hickory Pointe Homeowners Ass'n v Smyk,* 262 Mich App 512, 516; 686 NW2d 506 (2004).

The general principles that apply when considering a constitutional challenge to a taxing statute are set forth in *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400, 413-415; 488 NW2d 182 (1992). See also *Jefferson Smurfit Corp v Dep't of Treasury,* 248 Mich App 271, 277-278; 639 NW2d 269 (2001). "The presumption of constitutionality is especially strong with respect to taxing statutes. . . . A taxing statute must be shown to clearly and palpably violate the fundamental law before it will be declared unconstitutional." *Id.* at 277 (citations, internal quotation marks, and brackets omitted).

The constitutional challenge at issue concerns the Commerce Clause, US Const, art I, § 8, cl 3, which expressly grants Congress the power to "regulate Commerce . . . among the several States" and contains "a further, negative command, known as the dormant Commerce Clause [doctrine], prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Oklahoma Tax Comm v Jefferson Lines, Inc,* 514 US 175, 179; 115 S Ct 1331; 131 L Ed 2d 261 (1995).

A state tax is constitutionally valid under the Commerce Clause "provided that the tax: (1) is applied to an activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state." *Caterpillar,* 440 Mich at 415, citing *Complete Auto Transit, Inc v Brady,* 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977). In this case, the parties' arguments are primarily directed at the first and second prongs.

### A. SUBSTANTIAL NEXUS

Defendant asserts that the substantial nexus prong is satisfied under its interpretation of the statute because the tax is being applied to projects in Michigan. Plaintiff asserts that this argument "is contrary to the Stipulation of Facts, which unambiguously states that receipts at issue are not for construction, but rather are for engineering and architectural services rendered outside Michigan." Citing *Allied-Signal, Inc v Director, Div of Taxation,* 504 US 768; 112 S Ct 2251; 119 L Ed 2d 533 (1992), plaintiff contends that to satisfy the Due Process Clause and the Commerce Clause, a state must have a connection not only to the taxpayer but also to the specific activities it seeks to tax.

However, analysis of the substantial nexus prong does not depend on whether the particular activity may be geographically assigned to Michigan, as the parties' arguments imply.

In *Allied-Signal,* 504 US at 778, the Court reiterated "the requirement that, in the case of a tax on an activity, there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax," and explained that there are two different inquiries that may arise in the context of a challenge to the nexus. "The constitutional question in a case such as *Quill Corp* [*v North Dakota,* 504 US 298, 315; 112 S Ct 1904; 119 L Ed 2d 91 (1992)] is whether the State has the authority to tax the corporation at all." *Allied-Signal,* 504 US at 778. The *Quill* Court held that the Commerce Clause required a taxpayer's physical presence in the taxing jurisdiction. See *Barclays Bank PLC v Franchise Tax Bd of California,* 512 US 298, 312 n 10; 114 S Ct 2268; 129 L Ed 2d 244 (1994); *Rayovac Corp v Dep't of Treasury,* 264 Mich App 441, 444-448; 691 NW2d 57 (2004). The Court in *Allied-Signal* distin-

guished the issue there from that in *Quill*: "The present inquiry, by contrast, focuses on the guidelines necessary to circumscribe the reach of the State's legitimate power to tax." *Allied-Signal,* 504 US at 778. In this case, as in *Barclays Bank PLC,* there is no dispute whether plaintiff had a physical presence in Michigan and that Michigan had the authority to tax plaintiff. Rather, plaintiff's challenge in the present case concerns whether the state exceeded the reach of its legitimate power to tax.

With respect to the allocation of income, the requisite connection between a taxing state and the business activity does not depend on geographical accounting of the particular income-producing business activity. Because of complications and uncertainties in allocating income of multistate businesses, states are permitted to tax those businesses "on an apportionable share of the multistate business carried on in part in the taxing State. That is the unitary business principle." *Allied-Signal,* 504 US at 778. A taxpayer wanting to exclude income from the general principle of apportionability because it lacks a satisfactory nexus with the taxpayer's in-state activities may not rely on the argument that the source of the income is geographically attributable to another state "so long as the intrastate and extra-state activities formed part of a single unitary business." *Mobil Oil Corp v Vermont Comm'r of Taxes,* 445 US 425, 438; 100 S Ct 1223; 63 L Ed 2d 510 (1980). Rather, the taxpayer must show that " 'income was earned in the course of activities unrelated to [those carried out in the taxing] State.' " *Allied-Signal,* 504 US at 787, quoting *Exxon Corp v Wisconsin Dep't of Revenue,* 447 US 207, 223; 100 S Ct 2109; 65 L Ed 2d 66 (1980), quoting *Mobil Oil Corp,* 445 US at 439. Thus, with respect to apportionment of income, a taxpayer mounting an attack on the connection between an

activity and the taxing state must frame the attack in terms of that standard, not whether the particular activity may be allocated to the state on a geographical basis.

We likewise conclude that, contrary to the assumptions in the parties' arguments, the connection between a taxing state and the activity does not depend on geographical accounting of the particular business activity. Although the decision in *Allied-Signal* concerned apportionment of income, rather than value added tax, the Court's decision in *Trinova* suggests that the same standard would apply with respect to apportionment under the SBTA. The United States Supreme Court upheld the use of the SBTA apportionment formula because it concluded that value added, like income, is not susceptible of precise geographic assignment. *Trinova,* 498 US at 374-380. The Court analogized the argument raised by the taxpayer in that case to arguments concerning allocation of income that the Court had previously rejected.

> As with a VAT [value added tax], the discrete components of a state income tax may appear in isolation susceptible of geographic designation. Nevertheless, since *Underwood Typewriter Co. v. Chamberlain,* 254 US 113; 41 S Ct 45; 65 L Ed 165 (1920), we have recognized the impracticability of assuming that all income can be assigned to a single source. In this respect, Trinova's argument becomes a familiar and often rejected genre of taxpayer challenge:
>
> "Apportionability often has been challenged by the contention that . . . the source of [particular] income may be ascertained by separate geographical accounting. The Court has rejected that contention so long as the intrastate and extrastate activities formed part of a single unitary business. . . ." [*Trinova,* 498 US at 377-378, quoting *Mobil Oil,* 445 US at 438.]

Thus, plaintiff's argument, that inclusion in the apportionment formula of receipts for services performed out

of state necessarily violates the Commerce Clause because the business activity lacks a substantial nexus with the state, is essentially the same "familiar and often rejected genre of tax-payer challenge[.]" *Trinova,* 498 US 378.

### B. "FAIRLY APPORTIONED"

"Fair apportionment requires that each state tax only its fair share of interstate business activity." *Caterpillar,* 440 Mich at 417. A determination whether apportionment is fair in a given case involves two components. First, the tax structure must be internally consistent, which means, " 'a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result[.]' " *Id.* at 419, quoting *Goldberg v Sweet,* 488 US 252, 261; 109 S Ct 582; 102 L Ed 2d 607 (1989). Second, the apportionment must be externally consistent, which "the choice of factors used in apportionment 'reasonably reflects the in-state component of the activity being [apportioned].' " *Caterpillar,* 440 Mich at 419, quoting *Goldberg,* 488 US at 262. Plaintiff does not challenge the external consistency component.

In *Oklahoma Tax Comm,* 514 US at 185, the Court explained the internal consistency component as follows:

> Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would *not also bear. This test asks nothing* about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage *as compared with commerce intrastate. A failure of inter-*nal consistency shows as a matter of law that a State is

attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax.

In the context of income apportionment, internal consistency requires that the formula "such that, if applied by every jurisdiction, it would result in no more than all of the unitary business's income being taxed." *Container Corp of America v Franchise Tax Bd,* 463 US 159, 169; 103 S Ct 2933; 77 L Ed 2d 545 (1983). Similarly, in the context of the SBT, the component requires that if every state were to impose an identical tax, "no more than one hundred percent of the taxpayer's business activity would be taxed." *Caterpillar,* 440 Mich at 419.

Section 53(c), as interpreted by defendant, fails the internal consistency test. If other states used the same apportionment formula, there are situations in which more than one state would tax business activity performed in one state for construction activities in another. This is demonstrated by consideration of a scenario in which a company performed services both in Michigan and out of state (for this example, Ohio) for construction activities in Michigan. Under defendant's interpretation of § 53(c), the receipts derived from both the in-state and out-of-state services are deemed Michigan receipts. For the internal consistency analysis, one assumes that other jurisdictions are using the same apportionment formula. If Ohio had the same apportionment formula, its ability to tax the business activity in Michigan and Ohio would depend on § 53(b). If the greater proportion of the business activity as measured by cost of performance occurred in Ohio, then the sale is an Ohio sale and would be used in the Ohio sales factor. In this situation, the taxpayer's business activity (services performed in Ohio and Michigan) would be in-

cluded in the sales factor of both jurisdictions' apportionment formula. As a result, the provision places interstate commerce at a competitive disadvantage with intrastate commerce. Thus § 53(c), as interpreted by defendant, fails the internal consistency component of the fair apportionment prong of the *Complete Auto* test and violates the Commerce Clause.

### V. CONCLUSION

We hold that MCL 208.53(c) is unconstitutional because it violates the Commerce Clause. Because there was a question on this constitutional issue, summary disposition was erroneously granted.

We remand for reconsideration of tax calculations.