**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:      Justices:
Clifford W. Taylor  Michael F. Cavanagh
                    Elizabeth A. Weaver
                    Marilyn Kelly
                    Maura D. Corrigan
                    Robert P. Young, Jr.
                    Stephen J. Markman

FILED MAY 2, 2007

FLUOR ENTERPRISES, INC.,

> Plaintiff-Appellee/
> Cross-Appellant

v                                                    No. 129149

REVENUE DIVISION, DEPARTMENT OF
TREASURY, STATE OF MICHIGAN,

> Defendant-Appellant/
> Cross-Appellee.

BEFORE THE ENTIRE BENCH

TAYLOR, C.J.

This case requires us to construe the provision of the Single Business Tax

Act (SBTA) found at MCL 208.53 that explicates how to allocate sales of

intangible personal property so as to determine whether they can be taxed by

Michigan. Specifically, we must decide whether receipts for plaintiff's services,

performed entirely outside Michigan for construction projects located in

Michigan, are deemed taxable sales under the statute and, if they are, whether that

interpretation of the statute results in the statute's being unconstitutional as a

violation of the Commerce Clause, US Const, art I, § 8, cl 3. The Court of Appeals held that the services were taxable but that this section of the statute violates the Commerce Clause of the constitution and thus is unenforceable. *Fluor Enterprises, Inc v Dep't of Treasury*, 265 Mich App 711; 697 NW2d 539 (2005). We reverse in part and affirm in part, agreeing that such receipts are taxable under the statute, but holding that this provision is not unconstitutional and thus is enforceable.

I

The Court of Appeals accurately summarized the facts in this case:

The facts in this case are undisputed. The receipts at issue were received by plaintiff for engineering and architectural services related to real estate improvement projects constructed in Michigan. The services were performed by plaintiff's employees at out-of-state facilities. Plaintiff timely filed single business tax (SBT) returns for the years at issue. However, plaintiff did not report the receipts at issue as Michigan receipts. Following an audit, defendant issued three bills for taxes due (intents to assess) totaling $182,312.

Plaintiff requested an informal conference with defendant's Hearings Division. Following an informal conference, the department referee issued a recommendation to the Commissioner of Revenue. The hearing referee agreed with plaintiff's interpretation of § 53(c). However, the Commissioner of Revenue disagreed with the referee's analysis and directed that the taxes be assessed as originally determined. Following the commissioner's order, defendant issued three bills for taxes due (final assessments) for total tax and interest of $343,340.96, which plaintiff then paid under protest. Plaintiff subsequently paid an additional $3,077.35 in interest.

Plaintiff filed this action in the Court of Claims to recover $346,618.31 paid under protest plus additional statutory interest, costs, and attorney fees. The parties both filed motions for summary disposition. Plaintiff moved for summary disposition pursuant to

2

MCR 2.116(A) (judgment on stipulated facts). Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). The Court of Claims concluded that the plain language of the statute supported plaintiff's position and entered judgment in favor of plaintiff, ordering defendant to pay $346,418.31 and interest. [*Id.* at 713-714.]

On appeal, the Court of Appeals reversed with regard to the Court of Claims construction of § 53 of the SBTA and held that the receipts for services performed for a construction project located in Michigan, even if the services were performed in another state, were "Michigan receipts," but that this section of the statute was unconstitutional as a violation of the Commerce Clause.

Defendant sought leave to appeal in this Court, seeking to have the ruling of unconstitutionality reversed. Plaintiff sought leave to cross-appeal, arguing that the Court of Appeals construction of the statute was erroneous. We granted the parties' applications for leave to appeal and cross-appeal.[1]

## II

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006). Likewise, questions of constitutional and statutory construction are reviewed de novo by this Court. *Id.* When interpreting a statute, we examine the language of the statute itself. "If the statute is

---

[1] 474 Mich 1097 (2006).

3

unambiguous it must be enforced as written."  *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 519; 676 NW2d 207 (2004).

III

The SBTA, MCL 208.1 *et seq*., is a business activity tax that was enacted "to provide for the imposition, levy, computation, collection, assessment and enforcement . . . of taxes on certain commercial, business, and financial activities . . . ." 1975 PA 228. As provided by the act:

> "Business activity" means a transfer of legal or equitable title to or rental of property, whether real, personal, or mixed, tangible or intangible, or the performance of services, or a combination thereof, made or engaged in, or caused to be made or engaged in, within this state, whether in intrastate, interstate, or foreign commerce, with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others . . . . [MCL 208.3(2).]

Thus, the act by definition encompasses taxation of services that are performed not only within the state ("engaged in . . . within this state") but also some that are performed out of state, as long as the reason those services are engaged in has its source within this state ("caused to be  . . . engaged in[] within this state"). When business activity is partially performed out of state, the statute establishes a system of apportionment, MCL 208.40 *et seq*., so that only those receipts appropriate to be taxed in Michigan are taxed here. Apportioning is based on a formula whereby a fraction reflecting the ratio of Michigan activity to out-of-state activity, i.e., Michigan sales/total sales, is established. *Jefferson Smurfit Corp v Dep't of Treasury*, 248 Mich App 271, 273 n 1; 639 NW2d 269 (2001). In

4

this case, where the sales factor is at issue, the question is which sales of plaintiff's total sales should be included in its "Michigan sales" numerator.[2]

To ascertain whether receipts for intangible property, such as services, comprise "Michigan sales," we turn to MCL 208.53. It provides:

> Sales, other than sales of tangible personal property, are in this state if:
>
> (a) The business activity is performed in this state.
>
> (b) The business activity is performed both in and outside this state and, based on costs of performance, a greater proportion of the business activity is performed in this state than is performed outside this state.
>
> (c) Receipts derived from services performed for planning, design, or construction activities within this state shall be deemed Michigan receipts.

Plaintiff asserts, and the Court of Claims agreed, that § 53(c) deems receipts for services taxable as Michigan receipts only if the services are performed within this state. That is, the phrase "within this state" modifies not just "activities" but also "planning," "design," and "construction." Because

---

[2] See MCL 208.51:

> (1) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer everywhere during the tax year.
>
> (2) For a foreign person, the sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer in the United States during the tax year.

5

plaintiff's planning and design services were not performed within this state, plaintiff argues, its receipts for those servives should not be taxable. We respectfully disagree with this approach. Plaintiff is essentially rewriting the statute so that "within this state" modifies "services performed." This is not how the statute reads.

The subject of § 53(c) is "receipts"; the statute states that certain "receipts" "shall be deemed Michigan receipts." Section 53(c) then narrows the category of receipts that will be "deemed Michigan receipts." The term "receipts" is modified by the phrase "derived from services performed." Thus, the statute specifies that to be "deemed Michigan receipts," "receipts" must be "derived from services performed." Section 53(c) further specifies which "services performed" will allow "receipts" to be "deemed Michigan receipts," namely, services performed "for planning, design, or construction activities within this state." The prepositional phrase "for planning, design, or construction activities" modifies "performed," and indicates the purpose for which the services must be performed. The phrase "within this state" modifies the term "activities." The term "activities" is the object of the preposition "for," and is modified by the preceding phrase "planning, design, or construction." The use of the term "or" in the phrase "planning, design, or construction" indicates that all three terms are correlative to each other. The term "construction" is clearly an adjective modifying the term "activities." Consequently, the terms "planning" and "design" are also adjectives that modify

6

the term "activities." Parsing the grammar otherwise would make "construction" an adjective, and "planning" and "design" nouns, and a grammatical construction that would make correlative terms unequal in this way should be avoided. Therefore, "activities" is modified by each of the terms "planning," "design," and "construction." As a result, the statute indicates that "[r]eceipts derived from" "services performed for planning activities within this state," "services performed for design activities within this state," and "services performed for construction activities within this state" are to be "deemed Michigan receipts." The statute thus subjects to taxation receipts for "services performed" in support of planning activities, design activities, or construction activities, as long as those activities take place "within this state." The statute does not state that the "services performed" must themselves be performed "within this state" in order for "[r]eceipts derived from" such services to be deemed Michigan receipts.[3]

---

[3] The concurrence finds the statute ambiguous because other interpretations have been proposed, citing *People v Adair*, 452 Mich 473, 479; 550 NW2d 505 (1996), for the rule that ambiguity exists when there can be reasonable disagreement over a statute's meaning. However, our current law is set forth in *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004), where this Court held: "[A] provision of the law is ambiguous only if it 'irreconcilably conflict[s]' with another provision or when it is *equally* susceptible to more than a single meaning." (citation omitted; emphasis in original). "[A] finding of ambiguity is to be reached only after 'all other conventional means of [] interpretation' have been applied and found wanting." *Id.* at 165, quoting *Klapp v United Ins*, 468 Mich 459, 474; 663 NW2d 447 (2003). The meaning of MCL 208.53 can be determined from the text of the statute and by using conventional means of statutory construction. Nothing in the statute irreconcilably conflicts or makes it equally susceptible to more than one meaning.

Consequently, we must look at whether the receipts are derived from "services performed for" one of the enumerated activities, with no geographic limit on where the services took place, and no limit on what type of services are being performed.[4]

The statute thus establishes a two-part analysis. First, it must be determined whether the actions sought to be taxed were "services performed" for "planning activities," "design activities," or "construction activities." Second, if the actions are "services performed" for such activities, it must be determined whether the activities occurred "within this state." If the activities occurred "within this state," then the actions are taxable under MCL 208.53(c). If the activities did not occur in Michigan, then the actions are not taxable under MCL 208.53(c).

In this case, plaintiff engaged in architectural and engineering services performed for various Michigan construction activities. Because these actions constitute "services performed" for "construction activities," and those "construction activities" took place "within this state," the state may tax plaintiff's architectural and engineering services. Although plaintiff attempts to describe

---

[4] We note that the phrase "deemed Michigan receipts" itself reinforces the extraterritoriality of this provision, because this phrase suggests that receipts for activities that *would not ordinarily be* considered Michigan receipts will be considered, or treated as, Michigan receipts for purposes of the statute. Because receipts for Michigan activities would *ordinarily be* considered Michigan receipts,

(continued…)

what it did as performing design and planning *activities*, and that those activities took place in California, this ignores language in the statute that indicates receipts are paid for *services*, and services are engaged in *for activities*. It is undisputed that plaintiff performed its architectural and engineering services in support of "construction activities" that occurred in Michigan. Consequently, plaintiff's services fall within the language of MCL 208.53(c), and plaintiff's receipts for such services are taxable in Michigan. Plaintiff's attempt to construe its services as "planning or design activities" fails to recognize that plaintiff performed its services for "construction activities" within the state of Michigan. The receipts, pursuant to MCL 208.53(c), are therefore deemed Michigan receipts.

IV

Having determined that the statute allows plaintiff's receipts for services to be taxed as Michigan receipts, we turn to the question whether such a construction results in a tax that violates the Commerce Clause, US Const, art I, § 8, cl 3. As we have explained before, a state tax withstands scrutiny under a Commerce Clause challenge and will be found constitutionally valid if it meets the four-pronged test articulated in *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977). See *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 415; 488 NW2d 182 (1992). A valid tax: (1) is applied to an

---

(…continued)
this implies that receipts that are "deemed Michigan receipts" are for activities that
(continued…)

9

activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. *Id.*

Plaintiff first argues that it does not have a sufficient nexus with this state to be subject to the tax. "The requisite 'nexus' is supplied if the corporation avails itself of the 'substantial privilege of carrying on business' within the State . . . ." *Mobil Oil Corp v Comm'r of Taxes of Vermont*, 445 US 425, 437; 100 S Ct 1223; 63 L Ed 2d 510 (1980). "'[The] fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction.'" *Id.*, quoting *Wisconsin v J C Penney Co*, 311 US 435, 445; 61 S Ct 246; 85 L Ed 267 (1940). See also *Caterpillar, Inc, supra* at 416-417. The receipts at issue in this case were for services that plaintiff provided for construction projects in Michigan, and therefore "the incidence of the tax as well as its measure is tied to the earnings which the State . . . has made possible . . . ." *J C Penney Co*, *supra* at 446. Thus, there is a substantial nexus between the state and the activity being taxed.

Also at issue in this case is whether the tax imposed by MCL 208.53(c) is fairly apportioned. That is, the tax is not fairly apportioned if it allows Michigan to tax more than its fair share of interstate business activity. *Caterpillar, supra* at

---

(…continued)
take place outside the state.

10

417. A tax is not fairly apportioned if it is not internally consistent. "'To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result,' . . . or, in other words, no more than one hundred percent of the taxpayer's business activity would be taxed." *Id*. at 419, quoting *Goldberg v Sweet*, 488 US 252, 261; 109 S Ct 582; 102 L Ed 2d 607 (1989).[5] As the United States Supreme Court has said, internal consistency

> simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax. [*Oklahoma Tax Comm v Jefferson Lines, Inc,* 514 US 175, 185; 115 S Ct 1331; 131 L Ed 2d 261 (1995).]

In applying the "internal consistency" test, the United States Supreme Court has considered the entire taxing scheme, and not simply the individual tax provision at issue in a specific case. See, e.g., *D H Holmes Co, Ltd v McNamara*, 486 US 24; 108 S Ct 1619; 100 L Ed 2d 21 (1988) (considering a provision of the larger tax scheme). If the entirety of MCL 208.53 is considered, the statute is internally consistent. When we survey the statute as a whole, we conclude that § 53(c) is a more specific exception to the general subsections that precede it

---

[5] A taxing statute must also be externally consistent, *Caterpillar, Inc, supra* at 419, but because plaintiff does not challenge this, we examine only its internal consistency.

(§§ 53[a] and 53[b]).  See, e.g., *Jones v Enertel, Inc*, 467 Mich 266, 270; 650 NW2d 334 (2002) ("'[W]here a statute contains a general provision and a specific provision, the specific provision controls.'"  [Citation omitted.]).  In other words, § 53(a) applies to business activity that is solely performed in Michigan; § 53(b) applies to business activity that occurs both in and outside Michigan; and § 53(c) applies a special rule to planning, design, and construction activities, which is that as long as the services are performed for one of those activities, and the activity is located within this state, the receipts for the services are taxable regardless of where the services are performed.  This language excepts certain receipts from the broad rules of § 53(a) and (b).  It is, then, a specific exception to a general rule and falls within the *Jones* test.  Therefore, if California had a tax statute identical to MCL 208.53, in order to determine whether California could tax plaintiff's receipts for the services in this case, it would first have to consider whether the services were performed for planning activities, design activities, or construction activities.  Because the services in this case were performed for construction activities, California would be precluded from considering whether its counterpart to either § 53(a) or (b) allowed the receipts for the services to be taxed, because the more specific provisions of § 53(c) would govern.  Having determined that the services were performed for "construction activities," California would then consider whether these activities occurred within that state.  Because the construction activities, in fact, occurred in Michigan, California would be unable

12

to tax these under its counterpart statute. Consequently, because the planning activity, design activity, or construction activity can take place only in one state at a time, only one state can tax the receipts for the "services performed for" those activities. Therefore, if every state had a counterpart statute to MCL 208.53, interstate commerce would not be unfairly burdened or placed at any disadvantage. Therefore, because MCL 208.53 does not discriminate against interstate commerce, the statute does not violate the "internal consistency" test.

V

We conclude that MCL 208.53 is not ambiguous and that plaintiff's receipts for the services are taxable, regardless of where the services occurred, because they were performed for construction projects located in Michigan. We also hold that this interpretation does not violate the "fair apportionment" prong of the Commerce Clause because the statute is internally consistent. Likewise, we hold that plaintiff and its taxed activity have a substantial nexus with this state. We therefore affirm in part the Court of Appeals judgment but reverse it in part with regard to the analysis of fair apportionment, and we remand the case to the Court of Claims for further proceedings not inconsistent with this opinion.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

13

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

FLUOR ENTERPRISES, INC.,

     Plaintiff-Appellee/Cross-Appellant

v

No. 129149

REVENUE DIVISION, DEPARTMENT OF
TREASURY, STATE OF MICHIGAN,

     Defendant-Appellant/Cross-Appellee.

---

KELLY, J. (*concurring*).

This case involves the Michigan single business tax (the SBT). There are two issues. The first is whether the Single Business Tax Act (SBTA), at MCL 208.53(c), allows the defendant Department of Treasury to characterize receipts from planning and design services rendered entirely outside Michigan as Michigan sales. If it does, we must also address whether this interpretation renders the statute unconstitutional as violative of the Commerce Clause. US Const, art I, § 8, cl 3. I conclude that MCL 208.53 is ambiguous and that plaintiff's receipts for services are taxable. I conclude, also, that the statute does not violate the Commerce Clause.

Although I agree with the majority's decision to affirm in part and reverse in part the judgment of the Court of Appeals, I write separately because I disagree

with the majority's statutory interpretation. In addition, I see flaws in its analysis of the constitutional issue.

FACTS AND PROCEDURAL HISTORY

This case concerns the SBT imposed on plaintiff for the fiscal years ending October 31, 1989, through October 31, 1994. Plaintiff is a multinational engineering, construction, and technical service company having its principal place of business in Irvine, California. At issue are services plaintiff undertook for Michigan construction projects.[1] Plaintiff performed construction management and material procurement activities in Michigan for these projects. It also conducted engineering and architectural services for the projects at facilities outside Michigan.

Plaintiff timely filed its SBT annual returns for the years in issue. However, it did not attribute to Michigan, as Michigan sales, the receipts for engineering and architectural services that occurred outside the state but were performed for Michigan projects. Following an audit, defendant issued plaintiff three bills, called "intents to assess," for taxes due for the years in issue. The intents to assess were based on defendant's position that the receipts for the

---

[1] The Michigan projects for which plaintiff performed services include the cogeneration plant in Midland, a refinery modification for Marathon Oil Company in Detroit, and a steam building expansion for what was then the Upjohn Company in Kalamazoo.

engineering and architectural services should have been reported as having come from Michigan sales.

Plaintiff requested and was granted a departmental informal conference on its objections to the intents to assess. Following the informal conference, the hearing referee recommended that all three bills be canceled in their entirety. The referee determined that the receipts should not be considered as coming from Michigan sales for SBT apportionment purposes. The Commissioner of Revenue disagreed with the referee's recommendation and ordered the intents to assess made final as originally prepared. The commissioner affirmed the assessment in conformity with the department's long-held interpretation of § 53 of the SBTA.

Plaintiff paid the taxes under protest and filed an appeal in the Court of Claims. When the parties filed cross-motions for summary disposition, the Court of Claims denied the defendant's motion and granted plaintiff's. The court adopted plaintiff's construction of § 53 of the SBTA that limited Michigan sales to services performed in Michigan for construction projects in Michigan.

Defendant appealed as of right in the Court of Appeals, which reversed the judgment of the Court of Claims in a published opinion. It held that the Court of Claims incorrectly determined that § 53 of the SBTA limits Michigan sales to services performed in Michigan, but that the statute was unconstitutional. The Court of Appeals decided that the tax violated the Commerce Clause because it was not fairly apportioned. After holding that summary disposition had been

erroneously granted, the Court of Appeals remanded for reconsideration of the tax calculations.

Defendant applied for leave to appeal in this Court, seeking to reverse the ruling of unconstitutionality. Plaintiff applied for leave to cross-appeal, seeking to reinstate the Court of Claims statutory interpretation. This Court granted both parties' applications. 474 Mich 1097 (2006).

STANDARD OF REVIEW

An interpretation of a statute is a question of law that this Court reviews de novo. *Lincoln v Gen Motors Corp*, 461 Mich 483, 489-490; 607 NW2d 72 (2000). Constitutional questions are also reviewed de novo. *Michigan Chiropractic Council v Comm'r of the Office of Financial & Ins Services*, 475 Mich 363, 369; 716 NW2d 561 (2006). Likewise, this Court reviews de novo a trial court's decision on a motion for summary disposition. *Ostroth v Warren Regency, GP, LLC,* 474 Mich 36, 40; 709 NW2d 589 (2006).

When interpreting a statute, this Court must give effect to the intent of the Legislature. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). At times, it is possible to discern that intent from the language used. *Id.* However, where a statute is ambiguous, it is necessary to engage in judicial construction to ascertain intent. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). A statute is ambiguous when there can be reasonable

4

disagreement over its meaning. *People v Adair,* 452 Mich 473, 479; 550 NW2d 505 (1996).

THE SINGLE BUSINESS TAX ACT

The SBT is a value-added tax imposed on any person undertaking business activity in the state of Michigan. MCL 208.31. This includes companies that do all their business in Michigan as well as companies, like plaintiff, whose business activity is predominantly outside Michigan. A value-added tax measures a firm's total business activity. *Trinova Corp v Michigan Dep't of Treasury*, 498 US 358, 364; 111 S Ct 818; 112 L Ed 2d 884 (1991). "The tax is on what a business has added to the Michigan economy, not on what the business has derived from this state's economy." *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 666-667; 649 NW2d 760 (2002).

In order to determine the proper SBT for a multistate taxpayer, the tax base must be apportioned to Michigan. MCL 208.41. The formula used for apportioning the tax base consists of the sum of the sales factor, the payroll factor, and the property factor, divided by three.[2] At issue in this case is the calculation

---

[2] The apportionment factor for the tax years beginning before January 1991 was the average of three factors each weighted at 33-1/3 percent. See *Corning, Inc v Dep't of Treasury*, 212 Mich App 1, 3; 537 NW2d 466 (1995). For the tax years beginning after December 31, 1990, and before January 1, 1993, the apportionment formula consisted of the sum of the following percentages:

    (a) The property factor multiplied by 30%.

    (b) The payroll factor multiplied by 30%.

(continued…)

5

of plaintiff's sales factor. "The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax year, and the denominator of which is the total sales of the taxpayer everywhere during the tax year." MCL 208.51(1).

Section 52 of the SBTA, MCL 208.52, dictates when the sale of tangible personal property is in Michigan, while § 53 covers other sales, such as the sale of services. This case involves the application of § 53, which provides as follows:

> Sales, other than sales of tangible personal property, are in this state if:
>
> (a) The business activity is performed in this state.
>
> (b) The business activity is performed both in and outside this state and, based on costs of performance, a greater proportion of the business activity is performed in this state than is performed outside this state.
>
> (c) Receipts derived from services performed for planning, design, or construction activities within this state shall be deemed Michigan receipts. [MCL 208.53.]

---

(…continued)

> (c) The sales factor multiplied by 40%. [MCL 208.45(2), as amended by 1991 PA 77, § 1.]

And for the years at issue beginning after December 31, 1992:

> (a) The property factor multiplied by 25%.
>
> (b) The payroll factor multiplied by 25%.
>
> (c) The sales factor multiplied by 50%. [MCL 208.45(4), as amended by 1991 PA 77, § 1.]

6

It is subsection c that controls the disposition of this case.

INTERPRETING THE STATUTE

The first task is to decide whether subsection c of MCL 208.53 allows defendant to characterize receipts from planning and design services rendered entirely outside Michigan as Michigan sales. Four separate entities have interpreted this provision in the course of these proceedings.

The hearing referee and the Court of Claims adopted the interpretation advocated by plaintiff and found that § 53(c) does not allow defendant to characterize the out-of-state services as Michigan sales. The Commissioner of Revenue and the Court of Appeals agreed with defendant's interpretation and determined that § 53(c) does allow defendant to characterize the out-of-state services performed for Michigan construction projects as Michigan sales. The nonuniformity of these conclusions signals that the correct construction of this statute is not obvious.[3]

When the correct construction of a statute is unclear and reasonable minds differ about its interpretation, it is necessary to engage in judicial construction to

---

[3] The drafting of this statute is awkward and renders the meaning of subsection c less clear than it might be if it stood alone. The statute's parallel structure is flawed. Subsection c was grafted onto a standard provision from the Uniform Division of Income for Tax Purposes Act, § 1 *et seq.* (UDITPA). 7A, part I, ULA, p 141. However, its wording does not conform to the structure of the UDITPA provision. The introduction to all three subsections is a conditional definition of sales receipts as Michigan receipts, using the word "if." The wording
(continued…)

7

ascertain the Legislature's intent.[4]  *In re MCI*, 460 Mich at 411.  In construing a statutory provision, courts must reconcile the provision with other provisions of the statute, if possible.  And one part of a statute should not be construed so as to render another part nugatory or ineffective.   See, e.g., *Altman v Meridian*, 439 Mich 623, 635; 487 NW2d 155 (1992); *Farrington v Total Petroleum, Inc*, 442 Mich 201, 209; 501 NW2d 76 (1993).

According to plaintiff, receipts derived from planning activities, design activities, or construction activities are deemed Michigan sales only if the activities occur in this state.  This interpretation must be rejected.  Subsection a

---

(…continued)
of subsections a and b naturally completes the conditional phrase.  However, subsection c does not.

[4] The majority proceeds as if the statutory provision is unambiguous and needs no interpretation.  It is a bizarre notion that the language of a statute can have only one reasonable meaning when four separate independent entities have split on its correct interpretation.

The majority claims that my definition of ambiguity is inconsistent with current law.  The majority is within its rights to disagree with the definition I use for that word.  But it is off base in suggesting that its definition of "ambiguity" is the current law of the state.  It appears that the majority believes that only the definition of "ambiguity" that it favors may be used for statutory interpretation.  I know of no legal authority that supports that position.  The majority appears to confuse the binding effect of a legal holding necessary for the determination of a case with the nonbinding effect of the statutory analysis used to reach it.  The justices who comprise the majority are entitled to favor one form of analysis or one definition of a word used in analysis over another.  But they cannot mandate that all other justices use only their chosen approach or definitions for these words.  "Ambiguous" is one such word.  Differing modes of analysis and definitions may be considered disfavored in the sense that the majority prefers
(continued…)

8

expressly addresses services performed in Michigan. If § 53(c) were to be interpreted to mean that the services had to be performed in Michigan in order to be considered Michigan sales, then subsection c would be reduced to a redundancy.

By finding that services performed for construction projects located in Michigan are Michigan sales, each provision of the statute is given effect. When the statute is interpreted in this fashion, § 53(a) provides that when the business activity is in Michigan, the sales of other than tangible personal property are Michigan sales. Section 53(b) covers the situation where business activities are both in Michigan and outside Michigan. If a greater proportion of the business activity is in Michigan, then the sales of other than tangible personal property are characterized as Michigan sales. Section 53(c) addresses the situation where services are performed for planning, design, or construction projects in Michigan.

Another consideration that weighs in my determination is that a construction that nullifies the effectiveness of a statute should be avoided if possible. *In re Petition of State Hwy Comm*, 383 Mich 709, 714-15; 178 NW2d 923 (1970). Rather, when engaging in judicial construction, a court must bear in mind the purpose of the statute. "When faced with two alternative reasonable

---

(…continued)
others. But, the minority's definitions, when acceptable in current dictionaries, cannot be banned.

9

interpretations . . . , we should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute." *Adair*, 452 Mich at 479-480.

Apparently, the Legislature added subsection c in response to a concern advanced by Michigan-based engineering and architectural firms that, without it, they would be at a competitive disadvantage with out-of-state firms. They feared that out-of-state architects and engineers would gain a competitive advantage when bidding on Michigan construction projects if their services for in-state projects were not treated as Michigan sales.[5] The interpretation advocated by defendant addresses the concerns that appear to have prompted the enactment of this statute.

Finally, we defer to the construction given a statute by the agency chosen to enforce it. *Breuhan v Plymouth-Canton Community Schools*, 425 Mich 278, 283; 389 NW2d 85 (1986). Defendant has historically interpreted § 53(c) as ascribing services performed for construction projects to the state in which the construction occurs.[6] I give weight to this interpretation.

---

[5] A July 17, 1975, letter from the Consulting Engineers Council of Michigan, Inc., to Senator John Bowman proposed the addition of § 53(c). The letter and circumstances surrounding the adoption of the subsection demonstrate the intent in enacting it. It was enacted so that all the services performed for construction projects would be attributed to the state where the services are consumed.

[6] Defendant instructs its audit staff that services related to Michigan construction activities are by statute Michigan receipts. Defendant does not
(continued…)

10

The decision that the statute allows the revenues at issue to be taxed is not the end of the inquiry. It is also necessary to decide whether the tax violates the Commerce Clause of the United State Constitution.[7]

The Commerce Clause provides that "Congress shall have Power . . . [t]o Regulate Commerce . . . among the several States . . . ." US Const, art I, § 8, cls 1 and 3. "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc v Oregon Dep't of Environmental Quality*, 511 US 93, 98; 114 S Ct 1345; 128 L Ed 2d 13 (1994).

The United States Supreme Court has held that a state tax will survive a Commerce Clause challenge when the tax (1) is applied to an activity having a substantial nexus to the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S

---

(…continued)
attribute to Michigan similar receipts received by a Michigan-based company for construction activities in other states.

[7] I cannot join the majority's constitutional analysis because I find it to be incomplete and conclusory.

11

Ct 1076; 51 L Ed 2d 326 (1977). Plaintiff claims that the tax at issue violates the first two prongs of this test.[8]

Several principles should be kept in mind when analyzing the constitutionality of a tax. States have great latitude when enacting tax provisions. See *Trinova Corp,* 498 US at 386. Also, a statute is presumed constitutional absent a clear showing to the contrary. *Lehnhausen v Lake Shore Auto Parts Co*, 410 US 356, 364; 93 S Ct 1001; 35 L Ed 2d 351 (1973). This presumption of constitutionality is especially strong with respect to taxing statutes. *Washtenaw Co v State Tax Comm*, 422 Mich 346, 371; 373 NW2d 697 (1985), citing *Thoman v City of Lansing*, 315 Mich 566, 576; 24 NW2d 213 (1946).

Plaintiff argues that the construction defendant gives to this statutory provision permits the imposition of a tax on activities that do not have a substantial nexus with Michigan. It claims that no substantial nexus exists in this case because plaintiff's activities occurred outside Michigan, and a state cannot tax activities that occur outside that state. I find that plaintiff misconstrues the connection necessary for a state to have a substantial nexus with the taxpayer and the activity being taxed.

---

[8] Plaintiff also claims that the tax discriminates against interstate commerce because the tax is not fairly apportioned. Because this argument is based on the tax violating fair apportionment, plaintiff really argues only that the tax violates the first two prongs of the test.

"[I]n the case of a tax on an activity, there must be a connection to the activity itself, [and] a connection . . . to the actor the State seeks to tax . . . ." *Allied-Signal, Inc v Director, Div of Taxation*, 504 US 768, 778; 112 S Ct 2251; 119 L Ed 2d 533 (1992). Accordingly, two different inquiries may arise in determining whether the substantial nexus prong is satisfied. *Id.* First, the state must have the authority to tax. *Id.* For this authority to exist the taxpayer must have a physical presence in the taxing jurisdiction. See *Quill Corp v North Dakota*, 504 US 298, 311; 112 S Ct 1904; 119 L Ed 2d 91 (1992). Second, the state must not exceed its legitimate power to tax. *Allied-Signal, Inc*, 504 US at 778. "[T]he State's power to tax an individual's or corporation's activities is justified by the 'protection, opportunities and benefits' the State confers on those activities." *Id.*, quoting *Wisconsin* v *J C Penney Co*, 311 US 435, 444; 61 S Ct 246; 85 L Ed 267 (1940).

In this case, the parties stipulated that plaintiff performed construction management and material procurement activities in Michigan. On the basis of this presence, the state clearly has the power to tax plaintiff. The question becomes whether the state exceeded the legitimate reach of its power.

A taxpayer arguing that a tax lacks a substantial nexus to the activity taxed cannot rely on the argument that the source of the income is attributable to another state. *Mobil Oil Corp v Vermont Comm'r of Taxes*, 445 US 425, 438; 100 S Ct 1223; 63 L Ed 2d 510 (1980). Rather, to mount a successful challenge on this

ground, the taxpayer must show that the income taxed was "earned in the course of activities unrelated to [the taxing] State." *Id.* at 439.

Plaintiff cannot make this showing. Because the receipts at issue arose from services that plaintiff provided for Michigan construction projects, there is a substantial nexus between the state and the activity being taxed. As long as plaintiff has some physical presence in the state, the state may tax services that plaintiff performs out of state but that are generally consumed within Michigan. See *Trinova Corp,* 498 US at 374-377.

Plaintiff also claims that the interpretation advocated by defendant violates the Commerce Clause requirement of fair apportionment. According to plaintiff, the tax is not internally consistent. It reasons that, under this interpretation, every state with a similar statute could tax all of a business's receipts for planning and design activities. The result would be duplicative taxation, unconstitutionally putting interstate commerce at a competitive disadvantage.

In 1992, this Court ruled that "[f]air apportionment requires that each state tax only its fair share of interstate business activity." *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 417; 488 NW2d 182 (1992). Before that, the United States Supreme Court ruled that, to ascertain whether a tax is fairly apportioned, it must be examined for both internal and external consistency. *Goldberg v Sweet*, 488 US 252, 261-262; 109 S Ct 582; 102 L Ed 2d 607 (1989). Plaintiff does not

14

challenge the external consistency of the tax; therefore, in deciding whether this tax is fairly apportioned, it is examined for internal consistency only.

The United States Supreme Court discussed internal consistency in *Oklahoma Tax Comm v Jefferson Lines, Inc,* 514 US 175; 115 S Ct 1331; 131 L Ed 2d 261 (1995). It stated:

> Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax. [*Id.* at 185.]

Applying these principles to MCL 208.53, I conclude that the tax is internally consistent. Subsection c of the statute specifically deals with construction projects. When a construction project is involved, subsection c, being the more specific provision, applies and subsections a and b do not. Subsection c ascribes the business activity[9] for construction projects to the state where the construction occurs. Therefore, when a construction project is involved,

---

[9] When I speak of business activity, I refer not just to the physical labor that goes into building the project but also to the planning and design that take place beforehand.

15

only the state where the construction occurs taxes the business activity, and there is no double taxation.

An example is helpful to illustrate why there is no internal-consistency problem. Consider the situation where a company performed services both in Michigan and Ohio for a construction project in Michigan. If Ohio adopted the same tax apportionment formula as Michigan, both states would ascribe all the business activity to the state where the construction occurs. Because the construction occurred in Michigan, only Michigan would tax the services. As a result, only one state would tax the business activity and there would be no internal-consistency problem.[10]

CONCLUSION

MCL 208.53(c) allows defendant to characterize receipts from services performed for construction projects in Michigan as Michigan sales. Accordingly, defendant properly assessed taxes on the revenue for the engineering and design

---

[10] The Court of Appeals applied the internal-consistency test as if other states that adopted the same statute would ascribe construction activities under subsections a or b. This was error. When a construction project is involved, Michigan ascribes all business activity to the state where construction occurs. Therefore, for purposes of the test, other states that adopt the same statute would also ascribe all business activity to the state where construction occurs. Subsections a and b would be inapplicable. Admittedly, it is possible that another state could enact a statute that would allow for double taxation, which seems to be what the Court of Appeals was concerned about. However, the internal-consistency test does not say a taxpayer shall never be subject to double taxation. It says that, if every state emulates the state tax at issue, a taxpayer shall not be subject to double taxation.

16

services plaintiff provided for construction projects in Michigan, regardless of which services occurred outside Michigan. Because a substantial nexus exists between Michigan and the activity of plaintiff that is being taxed, and because the tax is fairly apportioned, the tax is constitutional. As a result, I concur in affirming in part and reversing in part the judgment of the Court of Appeals.

Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver